193 P.3d 858

**J–U–B ENGINEERS, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**SECURITY INSURANCE COMPANY OF HARTFORD, a Connecticut corporation; DPIC Companies, Inc., a California corporation; and Thomas H. Lopez, an individual; Howard, Lopez and Kelly, an Idaho professional limited liability company, and John Does 1–XX, Defendants–Respondents.**

No. 34239.

Supreme Court of Idaho.
Boise, May 2008 Term.

Sept. 24, 2008.

Capitol Law Group, PLLC, Gooding, for appellant. Angelo Rosa argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondents Security Insurance Company of Hartford and DPIC Companies, Inc. Stephen Thomas argued.

Hepworth, Lezamiz & Janis, Boise, for respondents Thomas H. Lopez and Howard, Lopez & Kelly. John Janis argued.

HORTON, Justice.

This action relates to claims of legal malpractice and breach of contract and the duties of good faith and fair dealing. Appellant J–U–B Engineers, Inc. (J–U–B) appeals the district court's grant of summary judgment in favor of Respondents Security Insurance Company of Hartford (Security Insurance), attorney Tom Lopez, and the law firm Howard, Lopez and Kelly, PLLC. We affirm the decision of the district court and award Respondents attorney fees on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises from an earlier action brought by Dick and Marlene Chapman against Kimball Engineering, P.A., a subsidiary of J–U–B. The Chapman lawsuit alleged that Kimball Engineering provided negligent engineering services to the Chapmans. Kimball Engineering was covered by a professional liability insurance policy issued by Security Insurance. Under the policy, in addition to providing coverage, Security Insurance had a duty to defend Kimball Engineering in the Chapman lawsuit and pay all litigation expenses. The insurance policy prohibited Security Insurance from settling any lawsuit without Kimball Engineering's written consent. Security Insurance retained the law firm Howard, Lopez and Kelly, PLLC to represent Kimball Engineering in the Chapman litigation. Attorney Thomas Lopez handled the case.

Lopez succeeded in obtaining a decision granting summary judgment in favor of Kimball Engineering based upon the expiration of the statute of limitations. J–U–B informed Lopez that it wished to pursue an award of attorney fees and costs in order to "punish" the Chapmans and deter future lawsuits against J–U–B. Lopez informed J–U–B that, in his opinion, they were unlikely to prevail on the motion for attorney fees and costs and that he would need to obtain approval from Security Insurance before bringing the motion. Lopez also explained that because the Chapman litigation also presented a claim against the City of Lewiston, he would need to obtain a certificate of final judgment from the trial court before pursuing the motion for attorney fees and costs. Lopez estimated that it would cost approximately $3,200 to pursue an award of attorney fees and costs. Lopez estimated that Kimball Engineering could obtain an award of approximately $850 in costs as a matter of right. To prevail on the award for attorney fees, Kimball Engineering would need to convince the trial judge that the Chapmans brought or pursued their action frivolously, unreasonably, or without foundation. Lopez estimated Kimball Engineering's chances of obtaining an award of attorney fees at twenty percent.

The Chapmans moved for reconsideration of the grant of summary judgment and Lopez moved for a certificate of final judgment pursuant to I.R.C.P. 54(b). On October 26, 2005, two days before these motions were

scheduled to be heard, the Chapmans' attorney called Lopez and informed him that the Chapmans would agree to dismissal of their case with prejudice if Kimball Engineering agreed not to pursue attorney fees and costs. Lopez and the Chapmans' attorney concluded the phone call after 5:00 PM.

The next morning, on October 27, 2005, Lopez called J–U–B's chairman of the board, Kirby Vickers, but was unable to reach him. Lopez left a short message indicating that he wished to discuss the Chapman litigation, but did not convey the terms of the Chapmans' proposal. Lopez next called Security Insurance's litigation management specialist, informing Security Insurance of the Chapmans' proposal and reiterating J–U–B's position regarding pursuit of attorney fees. Lopez was advised that, under the terms of the policy, the decision whether to pursue attorney fees rested with Security Insurance, not the insured. Lopez was directed to accept the Chapmans' proposal. An associate attorney in Lopez's firm was scheduled to fly to Lewiston at noon that day in order to attend the court hearing the next day. Lopez contacted the Chapmans' attorney shortly before noon and accepted the terms of the dismissal.

The district court signed the order dismissing the Chapmans' claim against Kimball Engineering with prejudice on October 28, 2005. Consistent with the agreement between Lopez and the Chapmans' attorney, the order provided that each party would bear their own costs and attorney fees. Vickers did not return Lopez's call until nearly 5:00 PM on October 28, 2005.

Following the dismissal of the Chapman lawsuit, J–U–B filed the instant action, asserting a claim for legal malpractice against Lopez and Howard, Lopez and Kelly, PLLC, the law firm of which Lopez is a member.[1] J–U–B also brought claims against Security Insurance, asserting breach of contract and violation of the covenant of good faith and fair dealing. The underlying basis for these claims is J–U–B's contention that Lopez and Security Insurance settled the Chapman law-

suit without J–U–B's consent, resulting in damages.

Lopez and Security Insurance each moved to dismiss pursuant to I.R.C.P. 12(b)(6). At hearing on those motions, the district court indicated that it would feel more comfortable deciding this matter upon motions for summary judgment. The district court expressed concern that the exhibits attached to the complaint were not part of the pleadings and that the parties were asking the court to consider documents outside the scope of the pleadings. Accordingly, Lopez and Security Insurance filed motions for summary judgment. In opposition to the motions for summary judgment, J–U–B submitted an affidavit from Vickers. Lopez and Security Insurance moved to strike portions of Vickers's affidavit. The district court granted the motion to strike portions of Vickers's affidavit and granted summary judgment in favor of Respondents, dismissing J–U–B's claims. J–U–B timely appealed to this Court.

## II. STANDARD OF REVIEW

When reviewing a ruling on a summary judgment motion, this Court employs the same standard used by the district court. *Sprinkler Irrigation Co. Inc. v. John Deere Ins. Co., Inc.,* 139 Idaho 691, 695, 85 P.3d 667, 671 (2004). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court liberally construes all disputed facts in favor of the non-moving party and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion. *Lockheed Martin Corp. v. Idaho State Tax Comm'n,* 142 Idaho 790, 793, 134 P.3d 641, 644 (2006).

The admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold question to be an-

---

1. J–U–B's claim against the law firm is entirely predicated on Lopez's conduct. For that reason, this opinion will hereafter refer to Lopez and the law firm collectively as "Lopez."

swered before applying the liberal construction and reasonable inferences rule to determine whether the evidence is sufficient to create a genuine issue for trial. *Gem State Ins. Co. v. Hutchison,* 145 Idaho 10, 13, 175 P.3d 172, 175 (2007) (citing *Carnell v. Barker Mgmt., Inc.,* 137 Idaho 322, 327, 48 P.3d 651, 656 (2002)). This Court applies an abuse of discretion standard when reviewing a trial court's determination of the admissibility of testimony offered in connection with a motion for summary judgment. *Id.* at 15, 175 P.3d at 177 (citing *McDaniel v. Inland Northwest Renal Care Group–Idaho, LLC,* 144 Idaho 219, 221, 159 P.3d 856, 858 (2007)).

## III. ANALYSIS

J–U–B's action against Respondents is based primarily on the claim that its reputation as an aggressive litigator was injured as a consequence of Respondents' failure to pursue an award of attorney fees and costs from the Chapmans. As a preliminary matter, we will address the district court's decision to strike portions of Vickers's affidavit relating to J–U–B's claimed damages before addressing the district court's grant of summary judgment in favor of Respondents.

### A. The district court did not err by striking portions of Vickers's affidavit.

The district court struck the following opinions contained in Vickers's affidavit: (1) that parties that settle frivolous lawsuits are perceived as "targets" for increased litigation by members of the construction industry in Idaho; (2) that J–U–B's reputation was injured as a result of the Kimball Engineering settlement, "which has made it a target for additional frivolous lawsuits" with the result that "J–U–B will or has already been damaged in an amount of at least five thousand ($5,000) and up to four hundred thousand dollars ($400,000) as a result of increased litigation burdens resultant from reputation damages"; (3) that an insurance policy without a settlement consent clause would be

worth only half the value of the premium paid ($27,089); (4) that the Chapman settlement harmed J–U–B's business reputation making it more difficult for J–U–B to secure and retain clients, resulting in damages of between $25,000 and $2.5 million. J–U–B argues that the district court abused its discretion by striking this testimony.[2] We disagree.

■ J–U–B acknowledges that these opinions are governed by evidentiary principles relating to expert testimony. The admissibility of expert testimony is a matter committed to the discretion of the trial court and this Court will not overturn its ruling absent an abuse of that discretion. *Swallow v. Emergency Med. of Idaho P.A.,* 138 Idaho 589, 592, 67 P.3d 68, 71 (2003). To determine whether a trial court abused its discretion, this Court inquires whether the trial court: (1) correctly perceived the issue as discretionary; (2) acted within the boundaries of its discretion; and (3) acted consistently with applicable legal standards and reached its decision by an exercise of reason. *Sprinkler Irrigation Co.,* 139 Idaho at 696, 85 P.3d at 672 (citing *Perry v. Magic Valley Reg'l. Med. Ctr.,* 134 Idaho 46, 50, 995 P.2d 816, 820 (2000); *Swallow,* 138 Idaho at 592, 67 P.3d at 71).

■ Under I.R.E. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier-of-fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." When determining the admissibility of an expert's opinion, the focus of the trial court's inquiry is on the principles and methodology used and not the conclusions they generate. *Weeks v. E. Idaho Health Services,* 143 Idaho 834, 838, 153 P.3d 1180, 1184 (2007) (citing *State v. Merwin,* 131 Idaho 642, 646, 962 P.2d 1026, 1030 (1998)).

■ The district court struck Vickers's opinion that parties settling frivolous lawsuits are perceived as "targets" for increased liti-

---

2. J–U–B's briefing asserts that the district court did not strike the entirety of Vickers's affidavit relating to these subjects. Our review of the district court's oral ruling leads us to a different

conclusion: all portions of Vickers's affidavit relating to these matters were the subject of the district court's order.

gation because Vickers's affidavit was silent as to the basis for this opinion. To the extent that Vickers's affidavit set forth his qualifications regarding litigation, it reflected that he has managed litigation involving J–U–B and its subsidiaries since the mid–1980's. Those litigation management duties have included oversight of billings from law firms, establishing annual budgets for litigation and oversight of J–U–B's litigation strategies. The affidavit is silent as to the basis for Vickers's opinion that those settling frivolous litigation become targets for increased litigation in the industry. We have held that it is incumbent upon an expert to set forth specific facts upon which an opinion is based. *Oats v. Nissan Motor Corp. in U.S.A.*, 126 Idaho 162, 166, 879 P.2d 1095, 1099 (1994). In the absence of any identifiable factual basis supporting Vickers's opinion, we are unable to conclude that the district court abused its discretion by striking this portion of Vickers's affidavit.

■ The district court struck Vickers's opinion that J–U–B's reputation was injured as a result of the Kimball Engineering settlement because there was no identified factual basis for the opinion. We agree that there is nothing in Vickers's affidavit that demonstrates the basis for his opinion. The district court struck Vickers's opinion that "J–U–B will or has already been damaged in an amount of at least five thousand ($5,000) and up to four hundred thousand dollars ($400,-000) as a result of increased litigation burdens resultant from reputation damages" as purely conclusory.[3] We have held that, to be admissible, an expert's testimony must assist the trier of fact to understand the evidence or to determine a fact in issue and that an expert's opinion that is speculative or unsubstantiated by facts in the record is inadmissible because it would not assist the trier of fact. *Athay v. Stacey*, 142 Idaho 360, 366–67, 128 P.3d 897, 903–04 (2005) (citing *Swallow*, 138 Idaho at 589, 67 P.3d at 68). The district court was correct that Vickers's affidavit does not demonstrate a factual basis for his opinion as to J–U–B's damages resulting

from increased litigation expenses. For this reason, we do not find error in the district court's decision to strike this opinion.

■ The district court also found Vickers's opinion that an insurance policy without a settlement consent clause would be worth only half the value of the premium paid to be conclusory. Vickers's affidavit simply does not identify the method by which he determined the value of a consent-to-settle clause. Indeed, Vickers's affidavit states that in 2005 he "conducted a general review of professional liability policies" before changing carriers. In that review, he did not find a policy that did not contain a settlement consent clause. The only inference that may be drawn from this statement is that Vickers had no factual basis upon which to place a value on the consent-to-settle clause. This reinforces the only reasonable conclusion that one may draw from a review of Vickers's affidavit: all damage figures advanced in that affidavit were drawn from thin air. We conclude that the district court did not abuse its discretion in striking this opinion.

■ Finally, the district court struck Vickers's opinion that the manner in which the Chapman litigation was resolved had harmed J–U–B's business reputation, making it more difficult for J–U–B to secure and retain clients, resulting in damages of between $25,000 and $2.5 million. Completely apart from the evident speculation reflected in an opinion expressing a range of damages varying by two orders of magnitude, we agree with the district court that there is simply nothing in Vickers's affidavit that demonstrates the factual basis for this opinion. Vickers does not identify any past, present or future clients with whom J–U–B's contractual relationships were impaired because of the Chapman litigation. We find no error in the district court's decision to strike this opinion testimony.

## B. The district court properly granted summary judgment in favor of all Respondents.

The district court granted summary judgment in favor of Lopez on the grounds that

---

**3.** We also note that J–U–B's attorney conceded to the district court that J–U–B would never be able to identify any particular lawsuit against J–U–B as resulting from the handling of the Chapman litigation.

J–U–B had failed to demonstrate two essential elements of its claim for legal malpractice: proximate cause and damages. The district court granted summary judgment in favor of Security Insurance, concluding that the handling of the Chapman litigation did not breach the contract or the implied covenant of good faith and fair dealing. This finding was based upon the district court's determination that "under the unambiguous terms of the Policy, the right to seek attorney fees and costs from the Chapmans was one that belonged solely to Security Insurance." Because we conclude that the record does not demonstrate that J–U–B suffered damages resulting from the resolution of the Chapman litigation, we affirm.

1. *The district court properly granted summary judgment in favor of Lopez.*

■■■■■■ J–U–B argues that a jury must decide whether it suffered any damages and if so, whether those damages are supported by competent evidence. We disagree. To establish a claim for professional negligence, the plaintiff must show: (1) the existence of an attorney-client relationship; [4] (2) the existence of a duty on the part of the lawyer; (3) the failure to perform that duty; and (4) the failure to perform the duty must be a proximate cause of the injuries suffered by the client. *Estate of Becker v. Callahan,* 140 Idaho 522, 526, 96 P.3d 623, 627 (2004) (citing *McColm–Traska v. Baker,* 139 Idaho 948, 951, 88 P.3d 767, 770 (2004); *Jordan v. Beeks,* 135 Idaho 586, 590, 21 P.3d 908, 912 (2001); *Marias v. Marano,* 120 Idaho 11, 13, 813 P.2d 350, 352 (1991); *Johnson v. Jones,* 103 Idaho 702, 652 P.2d 650 (1982)). Summary judgment is appropriate if the plaintiff

fails to demonstrate the existence of a genuine issue of material fact as to causation and damages. *McPheters v. Maile,* 138 Idaho 391, 396, 64 P.3d 317, 322 (2003).

■■■■ Under the terms of its insurance policy with Security Insurance, J–U–B was not entitled to recover attorney fees or costs in the Chapman litigation. The insurance policy included a subrogation clause that transferred J–U–B's right to recover attorney fees and costs to Security Insurance.[5] Any recovery of attorney fees or costs in the Chapman litigation would have inured to the benefit of Security Insurance. Therefore, even if J–U–B had obtained an award of attorney fees and costs against the Chapmans, it would not have been entitled to these funds. Consequently, J–U–B has not shown that it suffered direct damages resulting from Lopez's failure to pursue an award of attorney fees and costs in the Chapman litigation.

J–U–B argues that, because the insurance policy was a "wasting" contract, funds expended in defense of the Chapman litigation reduced available coverage during the period of policy coverage. However, there is nothing in the record demonstrating that the reduced coverage resulted in J–U–B incurring a financial loss during the coverage period. In the absence of evidence that Respondent's decision not to pursue an award of attorney fees and costs against the Chapmans resulted in an actual financial loss, rather than simply a potential for financial loss, we conclude that J–U–B has not demonstrated damage resulting from the "wasting" provision of the insurance policy.

4. The district court noted that J–U–B did not have an attorney-client relationship with Lopez; rather, Lopez had an attorney-client relationship with Kimball Engineering, a subsidiary of J–U–B. The district court made a similar observation with regard to the claims against Security Insurance, noting that J–U–B was not a party to the insurance policy. The district court declined to decide the motions for summary judgment on these grounds, observing that J–U–B could simply amend the complaint to bring Kimball Engineering into the suit. Indeed, J–U–B filed a motion to substitute Kimball Engineering as the real party in interest after Lopez and Security Insurance challenged whether J–U–B was the appropriate party-plaintiff. The district court de-

nied the motion as moot in view of its determination that Respondents were entitled to summary judgment. J–U–B has not appealed this decision.

5. Provision IV. C. of the insurance policy provides, in relevant part:

Transfer of Rights of Recovery Against Others to Us (Subrogation)
You and the Company may have rights to recover all or part of any payment you or the Company make under this policy. If so, those rights are transferred to us. At our request, you will cooperate in transferring those rights to us and in helping us enforce them.

J–U–B also claims that it is entitled to damages because its reputation as an aggressive party to litigation was damaged as a result of the resolution of the Chapman litigation. J–U–B argues that it has constructed a reputation as a pugnacious litigator and that the manner in which the Chapman litigation was resolved damaged that reputation. J–U–B has not directed us to authority for the proposition that a party may claim damages to its reputation arising from legal malpractice. Although we express doubt that such damages may ever be recoverable, we need not reach this question of law because there is simply no admissible evidence in the record before us that J–U–B has sustained damage to its reputation based upon the resolution of the Chapman litigation. Accordingly, the district court did not err by granting summary judgment in favor of Lopez.

2. *The district court did not err in its grant of summary judgment in favor of Security Insurance.*

■■■ As previously noted, the district court granted summary judgment in favor of Security Insurance, concluding that the handling of the Chapman litigation did not breach the contract or the implied covenant of good faith and fair dealing. Although a majority of this Court would affirm on this ground, we are not unanimous. However, because we are unanimous in our agreement that the record does not demonstrate damages resulting from the claimed breach of Security Insurance's contractual duties, we affirm on that basis.

Unlike its claim for damages against Lopez, J–U–B has presented authority from other jurisdictions [6] that supports an award of damages to an insured professional's reputation resulting from the breach of a consent-to-settle clause in an insurance contract. However, we need not address whether a plaintiff in this state can recover damages for injury to reputation resulting from breach of such a clause, as there is simply no admissi-

ble evidence in the record to support such a claim in this case.

J–U–B's claim for damages against Security Insurance advanced the same components of damages as claimed against Lopez. As noted in Part III(B)(1) of this opinion, *supra*, J–U–B has failed to demonstrate a genuine issue of material fact supporting these claims. Accordingly, we affirm the district court's grant of summary judgment in favor of Security Insurance, albeit on different grounds.

### C. Attorney fees on appeal.

Lopez and Security Insurance request attorney fees on appeal pursuant to I.C. § 12–121. Idaho Code § 12–121 permits an award of reasonable attorney fees to the prevailing party on appeal if the action was brought or pursued frivolously, unreasonably or without foundation. *Ada County Highway Dist. v. Total Success Investments, LLC,* 145 Idaho 360, 372, 179 P.3d 323, 335 (2008) (citing *Baker v. Sullivan,* 132 Idaho 746, 751, 979 P.2d 619, 624 (1999)). Lopez and Security Insurance have prevailed in this appeal.

■■■ The central issue in this case was whether the district court abused its discretion by striking Vickers's affidavit in support of J–U–B's damages claim. We have repeatedly stated that " '[w]here issues of discretion are involved, an award of attorney fees is proper if the appellant fails to make a cogent challenge to the judge's exercise of discretion.' " *Utter v. Gibbins,* 137 Idaho 361, 367, 48 P.3d 1250, 1256 (2002) (quoting *Andrews v. Idaho Forest Indus., Inc.,* 117 Idaho 195, 197, 786 P.2d 586, 589 (Ct.App. 1990)). J–U–B's arguments on appeal have failed to meet this standard. J–U–B failed to present legal authority in support of its claim for reputation damages arising from legal malpractice against Lopez and misrepresented legal authority from this state in support of its claim against Security Insurance. Therefore, we award Lopez and Secu-

---

**6.** In its briefing before this Court, J–U–B asserts that the Idaho Court of Appeals has held "that damages to reputation that flow as a natural consequence of the breach may also be awarded." In support of this assertion, J–U–B cites

*Wing v. Hulet,* 106 Idaho 912, 684 P.2d 314 (Ct.App.1984). *Wing,* a crop loss case, simply does not address claims for damages to reputation, much less damage to the reputation of an insured.

rity Insurance attorney fees on appeal pursuant to I.C. § 12–121.

## IV.  CONCLUSION

We affirm the decisions of the district court striking portions of Vickers's affidavit and granting summary judgment in favor of Respondents.  We award Lopez and Security Insurance costs and attorney fees on appeal.

Chief Justice EISMANN, Justice BURDICK and Justice Pro Tem TROUT concur.

J. JONES, J., specially concurring.

I concur in the Court's opinion.  In my estimation, Lopez obtained a good result for J–U–B and should not have been subjected to this litigation.  Further, Security Insurance carried out its responsibilities to J–U–B and I would hold in Part III.B.2 that Security Insurance did not breach its contract, including the implied covenant of good faith and fair dealing.  One further observation is pertinent.  A reputation as a pugnacious litigator may be valuable, if it is based upon pugnaciously litigating meritorious issues.  It is counterproductive when it extends to litigation of meritless claims.