# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42916

DWIGHT RANDY GREEN, as an individual, )
as the son of Ralph and Jeanne Green, and as )
Shareholder of Green Enterprises, Inc.; )
KATHY LEFOR, as an individual, as the )
daughter of Ralph and Jeanne Green, and as )     Boise, December 2016 Term
a Shareholder of Green Enterprises, Inc.; and )
GARY GREEN, as an individual, as the son )       2017 Opinion No. 4
of Ralph and Jeanne Green, and as a )
Shareholder of Green Enterprises, Inc., )        Filed: January 23, 2017
)
    Plaintiffs-Appellants, )                        Stephen Kenyon, Clerk
)
v. )
)
JAMES GREEN, as an individual, as Trustee )
of the Ralph Maurice and Jeanne Green )
Revocable Inter Vivos Trust, as Conservator )
for Jeanne Green, and as President of Green )
Enterprises, Inc.; RALPH MAURICE AND )
JEANNE GREEN REVOCABLE INTER )
VIVOS TRUST; and GREEN )
ENTERPRISES, INC., an Idaho corporation, )
)
    Defendants-Respondents. )

---

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Hon. John T. Mitchell, District Judge.

The judgment of the district court is affirmed.

Silvey Law Office, LTD, Star, for appellants. Greg Silvey argued.

John F. Magnuson, Coeur d'Alene, for respondent.

---

HORTON, Justice,

    This is an appeal from the district court's order granting summary judgment and dismissing a lawsuit brought by Dwight Randy Green, Kathy Lefor, and Gary Green (collectively, "Siblings") against James Green ("James"). Siblings brought this action to challenge the Sixth Amendment to the Ralph Maurice and Jeanne Green Revocable Inter Vivos

1

Trust ("the Trust"), alleging it was the product of undue influence. The Trust was amended from an equal distribution between all of Ralph and Jeanne Green's children to a 100% distribution to James to the exclusion of the Siblings. The district court granted summary judgment after determining that Siblings had failed to show a genuine issue of material fact which would support a finding of undue influence. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1965, Jeanne Green inherited approximately 400 acres of property on Lake Pend Oreille in Bonner County. The property consists of timberland and includes 3,500 feet of shoreline. In 1976, Ralph and Jeanne formed Green Family Enterprises, Inc. ("the corporation") and Jeanne conveyed the property to the corporation. The corporation's property includes four cabins and leasable sites for about 16 other cabins. The corporation's income comes from leasing property and logging operations.

Ralph and Jeanne have five children, Siblings, James, and Sheila Green ("Sheila"). Sheila is disabled and not a party to this action. By 1998, Ralph and Jeanne had gifted a 10% interest in the corporation to each of the Siblings and James. In 1998, Ralph and Jeanne created the Trust to hold their remaining 60% interest in the corporation. The Trust was to be distributed equally among their children upon Ralph and Jeanne's death.

On April 2, 2010, the corporation held a shareholder meeting at which Siblings expressed the desire to use the property to generate revenue. Later in 2010, the corporation's bylaws were amended to reduce the number of directors from six to three and Siblings were not elected to the board of directors. During this later meeting, Siblings opposed a proposition to give James a long term lease of a cabin site on the property for a reduced price as they felt it would be an unequal distribution to shareholders. Siblings felt the long term lease at a greatly reduced rate could be viewed as self-dealing and jeopardize the tax status of the corporation. Following this meeting, Ralph and Jeanne expressed to Tevis Hull, the corporation's attorney, their desire to amend the Trust to make James first successor trustee in the place of Gary Green. Hull stated that he was not comfortable making this amendment and suggested they seek the help of another attorney.

On April 18, 2011, John Finney, counsel for Siblings, sent a letter to the corporation's tenants. The letter provided in part:

> This letter is to inform you and to put you on notice that my clients have concerns involving conduct of certain shareholders, directors and/or officers of the Corporation, specifically including but not limited to Ralph

Green and Jeanne Green. The concerns involve, but are not limited to, the competency and/or legal capacity of Ralph Green and/or Jeanne Green to negotiate and/or enter into new leases or renewals of your leases and also the legal authority for anyone to purport to negotiate and/or enter into longer term leases on the property.

Steps are underway to address my clients [sic] concerns, but any purported efforts to enter into long term leases or other purported leases, contrary to the existing annual leasing system terms, will be subjected to severe scrutiny, and if necessary, legal action….

On April 29, 2011, Ralph and Jeanne met with Richard Wallace, an estate attorney in northern Idaho. Ralph and Jeanne had been referred to Wallace by Steve Klatt, who began working for the corporation in 2011 providing professional consultation services.

James was present at the first meeting with Wallace. Following the meeting, Wallace drafted a new durable power of attorney and a Third Amendment to the Trust. These documents removed Gary Green as successor trustee and named James in his place. At the meeting, Ralph and Jeanne showed Wallace a copy of the letter Finney had sent to the tenants of the corporation.

Ralph and Jeanne then began to explore the option of putting the property in a conservation easement. On June 15, 2011, Klatt sent a letter to Kyler Wolf, the Interim Director and President of the Clark Fork Pend Oreille Conservancy (CFPOC), expressing Ralph and Jeanne's wishes to create a conservancy easement. Klatt's letter also expressed concern that the family was divided on the issue which could cause problems because each child owned a 10% interest in the corporation.

On June 23, 2011, Wallace drafted the Fourth Amendment to the Trust. The Fourth Amendment divided the property equally among Siblings and James but provided that the Trust assets would be divided among three charities if the children could not reach an agreement on a conservation easement. On September 9, 2011, two members of the CFPOC met with the family to provide additional information about conservation easements. The same day, the corporation had a shareholder meeting where Gary Green asked members, including Jeanne and Ralph, about their history of dementia. During this meeting, Jeanne withdrew her name from consideration for a position on the board of directors but still attempted to vote although she no longer was on the board of directors.

On September 15, 2011, the CFPOC wrote to the board of directors with a proposed "Letter of Intent to Establish Conservation Easement." Ralph and James executed the letter but Randy Green did not. The corporation sent letters to Siblings' counsel on October 14, 2011, and

October 19, 2011, urging Randy to execute the letter of intent. On October 26, 2011, CFPOC withdrew its offer for a conservation easement. CFPOC stated that some shareholders of the corporation had expressed significant reservations about proceeding forward which led to them withdrawing their offer. In October of 2011, Ralph told Wallace "that he and Jeanne were frustrated and tired of the process of dealing with Gary, Kathy, and Randy." Ralph then advised Wallace to prepare the Sixth Amendment as he and Jeanne felt that James was best able to follow his and Jeanne's wishes. Wallace attested that he did not discuss the preparation, execution or subject matter of the amendments to the Trust with James. Wallace also attested that he took no direction from anyone other than Ralph and Jeanne in preparation of the amendments. The Sixth Amendment to the Trust provided that James would receive all of the Trust assets upon Ralph and Jeanne's deaths.

Siblings brought this action on September 23, 2013. On August 29, 2014, James filed a motion for partial summary judgment. Oral argument was set for Monday September 29, 2014. On Friday September 26, 2014, Siblings filed a motion to continue. The district court granted this motion on the condition that Siblings pay James' attorney fees for attending depositions scheduled during the continuance. Following the continuance, oral argument was held on the motion for summary judgment on November 18, 2014. During the hearing, the district court granted James' motions to strike portions of Siblings' affidavits and to strike the affidavit of Siblings' expert, Dr. Bennett Blum, in its entirety. On November 20, 2014, the district court entered its memorandum decision and order granting James' motion for summary judgment. The district court's judgment dismissing Siblings' complaint was entered on December 12, 2014. Siblings timely appealed.

## II. STANDARD OF REVIEW

"When reviewing an order for summary judgment, this Court applies the same standard of review that was used by the trial court in ruling on the motion for summary judgment." *Quamada v. Arizmendez*, 153 Idaho 609, 612, 288 P.3d 826, 829 (2012) (quoting *Vreeken v. Lockwood Eng'g, B.V.*, 148 Idaho 89, 101, 218 P.3d 1150, 1162 (2009)). Summary judgment is proper, "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "When an action will be tried before the court without a jury, the judge is not constrained to draw inferences in favor of the party opposing a

4

motion for summary judgment but rather the trial judge is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts." *Loomis v. City of Hailey*, 119 Idaho 434, 437, 807 P.2d 1272, 1275 (1990). "Circumstantial evidence can create a genuine issue of material fact." *Anderson v. City of Pocatello*, 112 Idaho 176, 179, 731 P.2d 171, 174 (1986).

"The admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold question to be answered before applying the liberal construction and reasonable inferences rule to determine whether the evidence is sufficient to create a genuine issue for trial." *J-U-B Engineers, Inc. v. Security Ins. Co. of Hartford*, 146 Idaho 311, 314–15, 193 P.3d 858, 861–62 (2008). "This Court applies an abuse of discretion standard when reviewing a trial court's determination of the admissibility of testimony offered in connection with a motion for summary judgment." *Id.* at 315, 193 P.3d at 862. "To determine whether a trial court abused its discretion, this Court inquires whether the trial court: (1) correctly perceived the issue as discretionary; (2) acted within the boundaries of its discretion; and (3) acted consistently with applicable legal standards and reached its decision by an exercise of reason." *Id.*

### III. ANALYSIS

**A.  The district court did not abuse its discretion when it struck the affidavit of Dr. Blum.**

Siblings' expert witness, Dr. Bennett Blum, submitted an affidavit in which he opined that the Sixth Amendment "resulting in the Plaintiffs being disinherited and James Green receiving Ralph and Jeanne's entire estate indicates a transaction that was the result of James Green's undue influence over Ralph and Jeanne." Siblings argue that the district court abused its discretion when it struck Dr. Blum's affidavit in its entirety. The district court determined that Dr. Blum had failed to link his opinion to supporting facts. Because Dr. Blum had not identified the facts upon which he based his opinion, the district court found his opinion to be conclusory. Siblings argue that the district court abused its discretion because Dr. Blum stated that he had reviewed the entire record and based his opinion on the facts contained in the record.

"The admissibility of expert testimony is a matter committed to the discretion of the trial court and this Court will not overturn its ruling absent an abuse of that discretion." *J-U-B Engineers, Inc. v. Security Ins. Co. of Hartford*, 146 Idaho 311, 315, 193 P.3d 858, 862 (2008) (citing *Swallow v. Emergency Med. Of Idaho, P.A.*, 138 Idaho 589, 592, 67 P.3d 68, 71 (2003)).

Idaho Rule of Evidence 702 provides: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." I.R.E. 702. This Court has held, "that it is incumbent upon an expert to set forth specific facts upon which an opinion is based." *J-U-B Engineers, Inc*., 146 Idaho at 316, 193 P.3d at 863.

In *J-U-B Engineers*, an engineering company sued its insurance provider after it settled a lawsuit instead of going to trial and pursuing attorney fees. *Id*. at 314, 193 P.3d at 861. J-U-B Engineers sought to introduce testimony from its chairman, Kirby Vickers, that failure to aggressively pursue attorney fees would expose the corporation to frivolous litigation in the future. *Id*. at 315, 193 P.3d at 862. The district court struck the testimony because Vickers failed to identify the facts upon which he based his opinion. *Id.* at 315–16, 193 P.3d at 862–63. Although Vickers testified that he was familiar with J-U-B Engineers' litigation history, he failed to identify any facts relating to settlement of frivolous litigation. *Id*. at 316, 193 P.3d at 863. Upholding the district court, we stated: "In the absence of any identifiable factual basis supporting Vickers's opinion, we are unable to conclude that the district court abused its discretion by striking this portion of Vickers's affidavit." *Id.*

Here, Dr. Blum's affidavit failed to identify specific facts upon which he relied in forming his opinion. As in *J-U-B Engineers, Inc.*, this Court cannot conclude that the district court abused its discretion in striking his affidavit.

**B. The district court did not err when it ruled that Siblings had failed to present facts which would support a finding that James exerted undue influence on Ralph and Jeanne.**

Siblings argue that the district court erred when it ruled that the Sixth Amendment was not the product of undue influence after applying the four-part test adopted in *Gmeiner v. Yacte*, 100 Idaho 1, 592 P.2d 57 (1979).[1] Siblings also argue that the district court erred when it failed to apply a presumption of undue influence based on James's fiduciary role as a corporate director. The district court, after applying the *Gmeiner* test, found that the there was no genuine issue of material fact as to whether the Sixth Amendment was the product of undue influence. We agree.

---

[1] The four-part test was adopted verbatim from the second edition of American Jurisprudence. *Gmeiner*, 100 Idaho at 6–7, 592 P.2d at 62–3 (quoting 25 Am.Jur.2d *Duress and Undue Influence* § 36 (1966)).

In *Gmeiner*, this Court identified the four elements that must be shown to support a claim that an instrument was the product of undue influence. "It is stated generally that there are four elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence." *Gmeiner*, 100 Idaho at 6–7, 592 P.2d at 62–63 (quoting 25 Am.Jur.2d *Duress and Undue Influence* § 36 (1966)). Although there is no set order for evaluating these elements, all must be proven in order to support a claim of undue influence. *Quemada v. Arizmendez*, 153 Idaho 609, 615, 288 P.3d 826, 832 (2012). Because Siblings have failed to present sufficient evidence to withstand summary judgment on their claim that James had an opportunity to exert undue influence, they fail to satisfy the *Gmeiner* test. Therefore, we do not discuss the other elements of their undue influence claim.

### 1. Siblings have failed to demonstrate a genuine issue of material fact as to James' opportunity to exert undue influence.

Siblings argue that James had the opportunity to exert undue influence over Ralph and Jeanne because he was around his parents more than the other children. Siblings point to two facts in support of this element. They note that Jim worked on his cabin, that the cabin was located near Ralph and Jeanne and that he was the only child to hold a position on the board of directors. Thus, they conclude that he had more opportunity to exert influence over Ralph and Jeanne than did Siblings. The district court ruled that Siblings failed to show facts that would support this element and simply alleged that he was around his parents more than the other children. The district court was correct.

In *Gmeiner*, we noted that "[t]his element is the easiest to establish." *Gmeiner*, 100 Idaho at 8, 592 P.2d at 64. In so noting, we observed that those accused of exerting undue influence often will have lived with the grantor. *Id.*

James did not live with Ralph and Jeanne but did have more frequent contact with them. However, all amendments to the Trust were prepared by attorneys who had little contact with James. Wallace testified that he drafted the Sixth Amendment to the Trust at the request of Ralph and Jeanne. Siblings have failed to identify any instance where James had the opportunity to exert undue influence on Ralph or Jeanne in connection with the execution of the Sixth Amendment.

Siblings also argue that the district court erred when it failed to apply a presumption of undue influence in this case. Siblings contend that because James served as a director of the corporation he had a fiduciary relationship with Ralph and Jeanne. Because James was a fiduciary and also a beneficiary, Siblings assert that the district court should have applied a presumption of undue influence. The district court did not specifically address the presumption in its decision, most likely because it was addressed only in passing in the proceedings before the district court.

"In Idaho, undue influence is recognized where sufficient evidence has been presented that indicates a testator's (testatrix's) free agency has been overcome by that of another." *In re Estate of Roll*, 115 Idaho 797, 799, 770 P.2d 806, 808 (1989). "[A] rebuttable presumption of undue influence is created where a beneficiary of the testator's will is also a fiduciary of the testator." *In re Estate of Conway*, 152 Idaho 933, 939, 277 P.3d 380, 386 (2012). Once the presumption is applied, the proponent of the instrument bears the burden of rebutting the presumption. *Id.* This Court said in *Estate of Roll*:

> To rebut the presumption, the proponent must come forward with that quantum of evidence that tends to show that no undue influence existed. Once that burden has been met, the matter becomes one for the trier of fact. The existence of undue influence will be determined accordingly, and on appeal such determination will only be disturbed if not supported by substantial, competent evidence.

115 Idaho at 799, 770 P.2d at 808 (citing *King v. MacDonald*, 90 Idaho 272, 280, 410 P.2d 969, 973 (1965)). Siblings have failed to present facts sufficient to trigger this presumption.

In *Estate of Conway*, this Court discussed the application of the presumption. There, a niece of the testator challenged her aunt's will as being the product of undue influence. 152 Idaho at 936, 277 P.3d at 383. She argued that the presumption of undue influence was triggered because one of the will's beneficiaries was also the guardian of the testator. *Id.* at 939, 277 P.3d at 386. Although the trial court erred when it found that the beneficiary in question was a co-guardian, this Court held that such a finding would not affect the presumption, stating "[t]here is nothing in this Court's jurisprudence to suggest that the presumption of undue influence is affected by the particular nature of the fiduciary relationship." *Id.* We take this opportunity to address this gap in this Court's jurisprudence.

The Third Restatement of Property explains that "[a] donative transfer is procured by undue influence if the wrongdoer exerted such influence over the donor that it overcame the

donor's free will and caused the donor to make a donative transfer that the donor would not otherwise have made." Restatement (Third) of Property (Wills & Don. Trans.) § 8.3 (2003). A comment to this section of the Restatement discusses when a presumption of undue influence will arise. "A presumption of undue influence arises if the alleged wrongdoer was in a confidential relationship with the donor and there were suspicious circumstances surrounding the preparation, formulation, or execution of the donative transfer…." *Id.* Comment f.

Here, Siblings have failed to make a connection between James' fiduciary duty as a corporate director and the execution of the Sixth Amendment to the Trust. Siblings argue that the fact that James occupied the role of fiduciary and beneficiary should trigger the presumption. In order to trigger the presumption of undue influence, opponents of an instrument must show some nexus between the fiduciary relationship and the execution of the donative instrument. Because Siblings have failed to show any connection at all between James' fiduciary role as a corporate director and the execution of the Sixth Amendment, the district court did not err when it did not apply the presumption.

Because Siblings have failed to present facts that would support a finding that James had the opportunity to exert undue influence and have also failed to show a nexus between James' role as a corporate director and the execution of the Sixth Amendment to the Trust, the district court did not err when it ruled that the Sixth Amendment to the Trust was not the product of undue influence.

## C. New Judge on remand.

Siblings ask that on remand this case be assigned to a new judge. Because we affirm the judgment of the district court, we do not reach this issue.

## IV. CONCLUSION

We affirm the judgment of the district court and award costs on appeal to James.

Chief Justice BURDICK, Justices EISMANN, W. JONES and Justice Pro Tem J. JONES, **CONCUR**.