410 P.2d 969

Anna Cameron KING, Christine Cameron, and John Cameron, Plaintiffs-Contestants-Respondents,

v.

John MacDONALD et al., Defendants-Contestees-Appellants.

In the Matter of the ESTATE of Maggie CAMERON, Deceased.

No. 9535.

Supreme Court of Idaho.

Dec. 31, 1965.

Rehearing Denied Feb. 28, 1966.

McCarthy & Adams, Lewiston, for appellants.

Ware, Stellmon & O'Connell, Lewiston, and J. M. O'Donnell, Moscow, for respondents.

McQUADE, Chief Justice.

In the year 1871 Murdo Cameron and his brother, Donald Cameron, left Scotland and settled on a homestead near Moscow in Latah County, Idaho. Murdo Cameron had three children, Anna, Christine and John, who are the plaintiffs-respondents herein. In 1881 a married brother, Duncan Cameron, his wife and their three daughters, Annie, Allie and Maggie Cameron, the last named being the decedent herein, arrived in Idaho from Scotland.

Mrs. Duncan Cameron died in 1905 and Duncan Cameron died in 1928. All of Duncan Cameron's farmlands were left to his three unmarried daughters. Annie Cameron died in 1944. In 1948 Allie Cameron suffered a stroke which left her partially paralyzed and unable to speak.

Until Annie's death and Allie's stroke, Maggie Cameron had not engaged in business transactions relating to the farm but had left those duties to her two sisters. Subsequent to 1948 Maggie assumed those business responsibilities.

The association of Julia Bezold with Maggie Cameron began in 1948, at which time Maggie was 68 years old, and the acquaintanceship continued until Maggie's death in 1960.

Prior to Maggie's first contact with Julia Bezold, there was no indication of an antagonistic or unpleasant relationship between Maggie Cameron and her cousins, plaintiffs-respondents in this action. Following thereto, however, it is contended that Julia Bezold alienated Maggie Cameron from her cousins. Appellants contend, however, that Maggie did not trust her relatives and discontinued their friendship of her own volition.

Christine Cameron, one of the respondents, testified that in 1949 Julia Bezold solicited her aid to estrange Maggie from three persons who had been Maggie's friends and business acquaintances: J. Morey O'Donnell, an attorney; Otto Schroeder, a bank employee; and Frank Matz, an oil distributor. The appellants presented evidence that such request was not made. The record reveals that the friendly business relations between these three men and Maggie did terminate.

It was about this time that Julia began to spend considerable time at Maggie's home. Thereafter telephone conversations between Christine and Maggie became restricted and Christine was later advised by Maggie not to call but that she, Maggie, would call Christine when Julia was not present. Formerly the two cousins had maintained friendly contact by phone, and

because both spoke Gaelic, their conversations were in that language.

The relationship between Julia and Maggie was such that Maggie made frequent visits to Julia's home, remaining there four months in 1950 and from November 1956 until February 8, 1958, the date of Allie Cameron's death. Thereafter Maggie visited the Bezold residence on occasions. She died at the Bezold home on July 31, 1960.

During their association Julia assisted Maggie in the management of her business affairs and was virtually her constant companion in business transactions. Julia often drove Maggie's car on business and pleasure trips for Maggie.

On June 27, 1951, Maggie executed a will, which was prepared by Robert W. Peterson, attorney at law, whereby the sum of $2,000 was bequeathed to Julia Bezold. The residue of the estate was bequeathed to cousins in Scotland; the will specifically excluded all heirs and legal relatives living in the United States excepting her sister Allie. Julia was named as joint executrix of the will.

In 1955 Julia visited the office of attorney Peterson, seeking his help to effect a change in Maggie's will whereby Julia would be permitted to purchase the Cameron lands for $125 per acre. Peterson's response to this request was:

" * * * that I thought it was ridiculous; that it was not at all what Maggie Cameron wanted from prior conversations that I had had with her, and that I could have no part of it."

In 1956 Maggie, in the company of Julia, visited the office of Lloyd Martinson, an attorney, at which time she discussed a revision of the 1951 will, but no change was made.

In the fall of 1957, while Maggie was living at Julia's residence in Moscow, Julia arranged an appointment with Leslie T. McCarthy, an attorney practicing in Lewiston, Idaho, 30 miles from Moscow. Julia was not present in the private office of McCarthy during this consultation but waited in an outer room. After several trips, another will was prepared by McCarthy and executed by Maggie.

This will provided that Julia Bezold be permitted to purchase the Cameron lands at $150 per acre with a $10,000 down payment, the balance of the purchase price to be paid within 10 years; however, Maggie reserved a life estate to herself. Julia was bequested $3,000 and certain personalty. The remainder of the estate was to be distributed to relatives in Scotland.

On October 30, 1959, a codicil to the will was executed which generally affirmed the terms of the 1957 will and at that time a contract was executed between Maggie and Julia for the sale of the Cameron lands according to the terms of the 1957 will. In 1959 the approximately 800 acres of the

Cameron lands had a value of about $249,-000. The consideration by the terms of the contract of sale was $108,050.

On July 31, 1960, at the age of 79 years, Maggie Cameron died. The 1957 will and 1959 codicil were offered for probate and letters testamentary were issued to Lillian A. Johnson and Julia Bezold as executrices.

A petition for revocation of probate of will and letters testamentary was filed by the respondents in the probate court, which alleged that the will and codicil were procured and executed by the undue influence of Julia Bezold. The probate court entered judgment for the contestants-respondents; appellants appealed to the district court, wherein a trial *de novo* was had on the issues presented. The district court, sitting without a jury, affirmed the probate court judgment, finding that a confidential relationship existed between Julia Bezold and Maggie Cameron and that Julia had so subjected Maggie Cameron to her influence that the mind and will of Julia Bezold were substituted for the mind and will of Maggie Cameron, and that the will, codicil and contract were component parts of and steps in a single plan, purpose and design conceived and carried out by Julia Bezold to secure a major portion of the estate of Maggie Cameron. The proponents of the will and codicil appeal to this court from the judgment based thereon.

Appellants assign three specifications of error. The first contends that the evidence is insufficient as a matter of law to establish that Julia Bezold exercised undue influence over Maggie Cameron to secure favorable provisions for herself in Maggie's will and codicil. The second asserts that appellant's motion to dismiss and nonsuit at the close of respondents' evidence should have been granted because the evidence presented by the respondents was insufficient to sustain their burden of proving undue influence. The third assignment of error contends that the trial court erred in admitting, over objection, testimony by respondents' witnesses of conversations they had had with Maggie Cameron.

We will first consider the third assignment of error. Appellants argue that statements of Maggie, both before and after she executed her will and codicil, make up the great weight of the evidence introduced by respondents and that such evidence is inadmissible hearsay evidence.

The record contains numerous statements alleged to have been made by Maggie before and after execution of the will and codicil. Ordinarily these statements would be inadmissible if not part of the res gestae. 4 Jones, Commentaries on Evidence § 1615 (2d ed. 1926). However, declarations of a testator pertaining to his mental condition may be admissible to prove his inability to resist the influence of others. Declarations not confined to the time of the execution of the will, including those made

both before and after, may be received provided they are not too remote to throw light upon the mental condition of the testator at the time of the execution of the will. 4 Jones, Commentaries on Evidence § 1614 (2d ed. 1926), and In re Lunders' Estate, 74 Idaho 448, 263 P.2d 1002 (1953).

▮▮▮ Some statements of Maggie relate to the question of whether she had the capacity to resist pressure and her susceptibility to deceit. It is said in 6 Wigmore, Evidence § 1738 (3d ed. 1940), at page 121:

"The existence of undue influence or deception involves incidentally a consideration of the testator's *incapacity to resist pressure* and his *susceptibility to deceit,* whether in general or by a particular person. This requires a consideration of many circumstances, including his state of affections or dislike for particular persons, benefited or not benefited by the will; of his inclinations to obey or to resist these persons; and, in general, of his mental and emotional condition with reference to its being affected by any of the persons concerned. All utterances and conduct, therefore, affording any indication of this sort of mental condition, are admissible, in order that from these the condition at various times (not too remote) may be used as the basis for inferring his condition at the time in issue."

Those statements of Maggie reflecting her state of mind and susceptibility to undue influence by Julia in executing the will or codicil were properly admitted. In view of this evidence and other attendant circumstances, the admission into evidence of still other statements by Maggie concerning undue influence by Julia was harmless error.[1]

The other assignments of error relate to whether the evidence is sufficient as a matter of law to establish undue influence.

Undue influence has been defined as domination by the guilty party over the testator to such an extent that his free agency is destroyed and the will of another person substituted for that of the testator. In re Eggan's Estate, 86 Idaho 328, 386 P. 2d 563 (1963); In re Lunders' Estate, supra.

The trial court found that some of the factors which influenced the mind of Maggie Cameron were that Julia Bezold: was a close confidante in business transactions;

[1]. Such statements by Maggie are illustrated by:
Christine Cameron's testimony that in 1949 Maggie told her that Julia was going to have Maggie's estate and that in 1958 Maggie told her that the 1957 will was silly; Anna Papineau's testimony that Maggie told her that Julia made the will the way she wanted it and that it wasn't the way Maggie wanted it; and Anna Cameron King's testimony that in 1950 Maggie told her that Julia wanted the money bad enough to kill her for it.

prevented relatives from visiting with Maggie Cameron; alienated former friends, relatives and business associates; made statements that she intended to alienate friends and relatives from Maggie Cameron; undertook to modify Maggie Cameron's will; made arrangements for the 1957 will and the 1959 codicil; had developed a close and intimate relationship with Maggie Cameron; was a frequent visitor and had Maggie Cameron reside in the Bezold home; and purchased the Cameron property at a price substantially less than half its market value. Another factor in the court's findings of fact was that Maggie Cameron was elderly.

Appellants urge three evidentiary elements in support of their contention that Julia did not exercise undue influence over Maggie. These are: (1) a testamentary pattern, in that the wills and the codicil were consistent; (2) the competency of the testatrix to execute these instruments was not questioned; (3) the association between Julia Bezold and Maggie Cameron was not such that it could be found that Julia exercised undue influence over Maggie.

█ Where conflicting evidence is submitted to a trial court sitting without a jury, either as a court of law or as a court of equity, the findings of the court on questions of fact will not be disturbed where there is competent evidence to support them.

Cantlin v. Carter, 88 Idaho 179, 397 P.2d 761 (1964); Andrus v. Irick, 87 Idaho 471, 394 P.2d 304 (1964); Belts v. State ex rel. Department of Highways, 86 Idaho 544, 388 P.2d 982 (1964).

"In Estate of Randall, 60 Idaho 419, 93 P.2d 1, we held that in order to show undue influence it is not necessary to prove circumstances of either actual domination or coercion; that the only positive and affirmative proof required is of facts and circumstances from which undue influence may be reasonably inferred, for instance, that the beneficiary was active in the preparation and execution of the will. We further held that the mere existence of a confidential relation between a testator and a beneficiary in his will does not establish undue influence unless it appears that the beneficiary was active in the preparation and execution of the will." In re Lunders' Estate, supra, 74 Idaho at 454, 263 P.2d at 1006.

See also Swaringen v. Swanstrom, 67 Idaho 245, 175 P.2d 692 (1946).

█ There is sufficient competent evidence in the record to support the conclusion of the trial court. The judgment is affirmed.

Costs to respondents.

McFADDEN, TAYLOR and KNUDSON, JJ., and SPEAR, D. J., concur.