13 P.3d 5

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Burnell Owen WEAVER, Defendant–Appellant.**

No. 25242.

Court of Appeals of Idaho.

Oct. 30, 2000.

Greg S. Silvey, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; T. Paul Krueger II, Deputy Attorney General, Boise, for respondent.

SCHWARTZMAN, Judge.

Burnell Owen Weaver appeals from the sentence imposed following his plea of guilty to one count of kidnapping in the first degree. Weaver claims that the district court abused its sentencing discretion by (1) imposing an excessive sentence and (2) ordering him to reimburse the county for public defender fees in the amount of $14,166.55. We affirm the sentence but reverse the order for reimbursement.

## I.

### FACTS AND PROCEDURE

David Thompson, the sixteen year-old victim in this case, was dating Bonnie Barnes in August of 1997. Subsequently, Barnes began dating Shawn Smith. Weaver and Smith were living together at this time along with Ed Staley. Smith asked Barnes to marry him in December; Barnes accepted, but later decided to break off the engagement. Barnes lied to Smith and told him she was pregnant and that Thompson was the biological father. In January of 1998, Thompson and Barnes began dating again.

Smith planned to kill Thompson to eliminate him as a rival for Barnes' affections. Smith, along with Weaver who was aware of Smith's intentions, purchased a 9mm handgun from a private party. Thereafter, Smith and Weaver purchased a box of "hollow

point" ammunition from a drugstore. Smith and Weaver test-fired the gun that same day.

The plan that developed was for Weaver to pick up Thompson on the evening of January 30, 1998, under a ruse of asking Thompson to help him steal some stereo speakers. Weaver was then to drop Thompson off at 17 Mile Cave—a desert location about fourteen miles west of Idaho Falls—where Smith, Staley and Jade Hammer, another accomplice, would be waiting. Weaver followed through with this plan and arrived at the predetermined location with Thompson in the car. Weaver drove toward a car with its hood up, which gave the appearance that assistance was needed. When Weaver stopped, Thompson got out and began talking with Staley, whom he knew. As Thompson attempted to leave, Staley knocked him to the ground. Hammer then told Weaver to leave and he did. Thompson's body was found the next day at this location; he had been shot eight times.

On February 3, 1998, the state filed its complaint against Weaver charging him with murder in the first degree, I.C. §§ 18–4001, 18–4003(d), kidnapping in the first degree, I.C. §§ 18–4501(3), 18–4502, 18–4504(1), and conspiracy to commit murder in the first degree, I.C. §§ 18–4001, 18–4003(d), 18–1701. Because Weaver was unemployed and without other assets, the county public defender office was appointed to represent him at his first arraignment.

The parties eventually agreed that the state would dismiss the first degree murder and conspiracy to commit first degree murder charges in exchange for Weaver's plea of guilty to first degree kidnapping. The state further agreed not to ask for the death penalty. As to Weaver's sentence, I.C. § 18–4504 mandates a minimum sentence of indeterminate life imprisonment. At one point the state offered a plea bargain providing that Weaver would be sentenced to an inde-

terminate life sentence with a fixed term of ten years. Weaver rejected this offer and requested a bargain that would provide only a fixed seven-year term. The state declined. Weaver eventually pled guilty without an agreed upon recommendation from the state as to the fixed portion of the prison term.

At sentencing, the state recommended that Weaver be given a life sentence, with twenty years fixed. The court sentenced Weaver to a unified indeterminate term of life imprisonment, with fifteen years fixed. Weaver was also ordered to pay restitution in the amount of $3,166.75 and to reimburse the county for public defender fees in the amount of $14,166.55 spent in defending Weaver.

■ Weaver filed an I.C.R. 35 motion for leniency and reconsideration of his sentence, but it was denied after a hearing. Weaver appeals his sentence and the denial of his Rule 35 motion.[1] Notably, the State Appellate Public Defender was appointed to represent Weaver on appeal.[2]

## II.

**THE DISTRICT COURT DID NOT ABUSE ITS SENTENCING DISCRETION BY SENTENCING WEAVER TO AN INDETERMINATE LIFE SENTENCE WITH FIFTEEN YEARS FIXED FOR THE KIDNAPPING OF THOMPSON**

■ Where a sentence is within the statutory limits, the appellant bears the burden of demonstrating that it is a clear abuse of discretion. *State v. Hedger*, 115 Idaho 598, 604, 768 P.2d 1331, 1337 (1989). A sentence may constitute a clear abuse of discretion if it is unreasonable upon the facts of the case. *State v. Broadhead*, 120 Idaho 141, 145, 814 P.2d 401, 405 (1991), *overruled on other grounds by State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992).

1. In his brief, Weaver references the proceedings at his Rule 35 hearing, but never asserts that the district court abused its discretion in denying his Rule 35 motion. Weaver only claims that the district court abused its discretion by imposing an excessive sentence and ordering him to reimburse the public defender office. Accordingly, this Court will not address issues related to the

denial of Weaver's Rule 35 motion. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996).

2. Subsequently, conflict counsel was substituted in to replace the State Appellate Public Defender.

[A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.

Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

*Broadhead,* 120 Idaho at 145, 814 P.2d at 405, quoting *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

■ Where an appellant asserts that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record and focus upon the nature of the offense and the character of the offender. *State v. Hernandez,* 121 Idaho 114, 118, 822 P.2d 1011, 1015 (Ct.App.1991); *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). The maximum penalty for first degree kidnapping is fixed life imprisonment or death. I.C. § 18–4504. Weaver's minimum period of confinement is fifteen years. Therefore, Weaver must demonstrate that this fifteen-year period was an abuse of the district court's discretion.

With knowledge of their intended use, Weaver was present when the murder weapon and the "hollow point" ammunition were purchased. He was also present when the firearm was test-fired. Thereafter, Weaver tricked Thompson into leaving the safety of his residence and delivered him to 17 Mile Cave, knowing that several people were waiting there to kill Thompson. After Thompson was struck by Staley, Weaver drove away and went to Thompson's mother's residence, where he attempted to create an alibi and pretended to be worried about Thompson's whereabouts.

Weaver's criminal history reflects numerous juvenile offenses, including one for burglary and two for grand theft. Weaver has also been convicted of two prior felonies as an adult. The presentence investigator found that Weaver had "repeatedly taken the victim stance in the case" and reported at least three different versions of the offense. The investigator concluded that, "sentencing options are limited to incarceration ... for a substantial period of time."

At sentencing, the district court considered that Weaver participated in the purchase of the murder weapon and the ammunition; laughed about having to concoct an alibi during the purchase of the firearm; enticed Thompson from his home; apparently lacked remorse after the murder because of his continued contact with Thompson's family and friends on the night of the murder; and made several inconsistent accounts of the events on the night of the murder. The court then stated: "In light of those factors, I am concerned about the safety of society. One who has such little conscience may well be an extreme danger to society, not only in the past but in the future." The court concluded by finding that the nature of Weaver's crime required a severe penalty.

■ Weaver cites to the state's sentencing recommendation of twenty years fixed as evidence that his sentence is excessive because the state had earlier offered him a plea bargain with only a ten-year fixed term. However, we consider the nature of the offense committed and the character of the offender in determining if his or her sentence was reasonable and within a court's discretion. An unaccepted prior plea offer is not a part of this analysis. The fact that the state was, at one time, willing to agree to a fixed term of imprisonment less than that eventually recommended at sentencing is not determinative on appeal.

■ Based upon our review of the record, particularly the callous nature of Weaver's crime and its ultimate result, we conclude that Weaver's unified sentence of life imprisonment, with fifteen years fixed, was reasonable and necessary to effectuate the goals of sentencing. "The primary consideration [at sentencing] is and presumptively always will be, the good order and protection of society.

All other factors are, and must be, subservient to that end." *State v. Andrews*, 133 Idaho 893, 895, 994 P.2d 636, 638 (Ct.App. 2000), quoting *State v. Moore*, 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956). Therefore, Weaver's prison sentence is affirmed.

## III.

### THE DISTRICT COURT ERRED BY ORDERING REIMBURSEMENT OF PUBLIC DEFENDER FEES

Idaho Code § 19–852(a)(2) requires that a needy person[3] shall be provided "at public expense to the extent that the person is, at the time the court determines need, unable to provide for their payment" an attorney and the necessary services and facilities of representation. Idaho Code § 19–854(a) provides that the determination of whether a person is needy "shall be deferred until his first appearance in court or in a suit for payment or reimbursement under section 19–858, whichever occurs earlier. Thereafter, the court concerned shall determine, with respect to each proceeding, whether he is a needy person." Subsection (b) of I.C. § 19–854 then provides that: "In determining whether a person is a needy person and in determining the extent of his inability to pay, the court concerned may consider such factors as income, property owned, outstanding obligations, and the number and ages of his dependents." Finally, Subsection (c) authorizes that: "*To the extent that a person covered by section 19–852 is able to provide* for an attorney, the other necessary services and facilities of representation, and court costs, the court may order him to provide for their payment." (Emphasis added.)

In his application for the appointment of the public defender office, Weaver indicated that he could not post bail; had no cash or property with which to post a bond; had no current employer; had no current income from any source; had no savings, checking or cash accounts; and owed $138 per month in child support. Furthermore, it was later revealed that Weaver owed approximately $4,000 to $5,000 in unpaid child support. These facts were not challenged below; nevertheless Weaver was ordered by the district court to pay $14,166.55 as reimbursement for public defender services rendered to him. At the Rule 35 hearing, Weaver requested that this amount be reduced or completely nullified because he was going to be in prison for at least the next fifteen years and did not presently have the means to pay. The district court responded that Weaver "ought to pay for the defense [he received] if and when he can."

The state on appeal does not assert that Weaver was able to pay for his defense. Rather, the state claims that this issue was not preserved for appeal and that the district court's admonition that Weaver ought to pay, if and when he can, supports the ordered reimbursement. We disagree.

Firstly, Weaver did challenge the reimbursement order that was part of his judgment of conviction. While Weaver did not specifically argue that the court had erred by not making appropriate findings concerning his ability to pay, he did argue that he was presently totally unable to pay the amount ordered.

Secondly, unlike statutory provisions dealing with restitution, the above-cited reimbursement statutes do not allow an order to pay regardless of whether or not a defendant has the resources immediately available. *Compare* I.C. § 19–5304(7) (providing that "the immediate inability to pay restitution by a defendant shall not be, in and of itself, a reason to not order restitution"). Rather, I.C. § 19–854(c) specifically provides that a defendant can only be made to reimburse the state for the defense services rendered "to the extent that ... [he or she] is able [to pay]." Thus, Idaho law requires that a defendant presently have the means to pay for an attorney's services before a reimbursement award can be entered. No such finding was made, or could have been made, by the district court.

---

3. A "needy person" is statutorily defined as a person who, at the time his need is determined, is unable to provide for full payment of an attorney and all other necessary expenses of representation. I.C. § 19–851(c).

On the record before us, we conclude that the district court erred by ordering Weaver to reimburse the county public defender office for its services rendered. As was succinctly argued by Weaver on appeal, the question before the district court was could Weaver pay, not should he pay.[4]

## IV.

### CONCLUSION

We conclude that the nature of Weaver's offense and the role he played in the eventual murder of David Thompson makes his extended period of incarceration reasonable. Therefore, Weaver's unified life sentence, with fifteen years fixed, for kidnapping in the first degree is affirmed. However, that part of Weaver's judgment of conviction ordering him to reimburse the county for public defender fees in the amount of $14,166.55, for services rendered, is reversed. It is beyond dispute that Weaver was a needy person and completely unable to provide for full payment of an attorney at the time of sentencing.[5]

Chief Judge PERRY and Judge LANSING concur.

---

4. We note that I.C. § 19–858(b) authorizes a county prosecuting attorney to file a civil suit to secure reimbursement for legal services rendered to a defendant within three years of the date that such services were rendered, provided such person is financially able to reimburse the county on the date said suit is brought.

5. We also note that under I.C. § 18–112A, a felony defendant may be *fined* up to $50,000 without regard to his or her present ability to pay.