**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 48381**

| | |
|---|---|
| KATHLEEN GESTNER, an individual, and DONALD RAY WOODFIN, JR., an individual, ) ) ) ) | |
| Appellants, ) | Lewiston, April 2022 Term |
| ) | |
| v. ) | Opinion filed: October 21, 2022 |
| ) | |
| JULIE L. DIVINE, individually, and in her ) capacity as Trustee of the Woodfin Family ) Trust, dated April 8, 1999, as amended, and ) as Personal Representative of the Estate of ) Marjorie E. Woodfin, ) ) | Melanie Gagnepain, Clerk |
| Respondent. ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Cynthia K. C. Meyer, District Judge.

The decision of the district court is affirmed.

Fulgham Law, PLLC, Spokane, WA, for Appellants. Mischelle R. Fulgham argued.

Bendell Law Firm, PLLC, Post Falls, for Respondent. James M. Bendell argued.

---

ZAHN, Justice.

This case concerns an amendment to a family trust that disinherited two stepchildren, which the stepchildren argue was the result of undue influence. We affirm the district court's decision finding the stepchildren failed to establish the amendment resulted from undue influence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Donald and Marjorie Woodfin married in 1997. At the time, Donald had two adult children, Kathleen (Kathy) Gestner and Ray Woodfin, and Marjorie had two adult children, Julie Divine and Colleen Shiras. Donald and Marjorie created the Woodfin Family Trust, a revocable

1

trust, in 1999. The 1999 Trust identified Donald and Marjorie as settlors, trustees, and beneficiaries of the trust. Kathy and Julie were identified as the successor co-trustees, with Ray to take Kathy's place if she were unable to serve and Colleen to take Julie's place if she were unable to serve. The 1999 Trust further provided that after the death of one settlor, the trust remained revocable by the surviving settlor for as long as he or she lived, including permitting the surviving settlor to change the beneficiaries of the trust by any legal means.

Upon the death of the surviving spouse, the 1999 Trust identified the primary beneficiaries as Ray, Kathy, Colleen, and Julie. Pertinent to this appeal, the 1999 Trust provided for the following special bequest after the death of the surviving settlor:

> 1. It is the intent of the Settlors to pass on to their respective children monies possessed by each respective Settlor at the time of the Settlors' marriage to each other. At that time Settlor Donald R. Woodfin had approximately $200,000 of such finds and Settlor Marjorie E. Woodfin had approximately $100,000 of such funds, the difference between the two being the sum of $100,000. Therefore, upon the death of the Surviving Settlor, or as soon thereafter as is practicable, the Trustee shall distribute the following as a Special Bequest:
>
> > To Donald Ray Woodfin, Jr., and Kathleen Ann Gestner the sum of $100,000 (One Hundred Thousand Dollars) in equal shares. If either or both is not living, the share of the deceased one shall be distributed in equal shares to the children of the deceased one.

The 1999 Trust also provided for the distribution of any remaining assets of the trust to Ray, Kathy, Julie, and Colleen in equal shares.

Donald died in 2000. Kathy and Marjorie corresponded by telephone for many years after Donald's death, but Ray and Marjorie's communication was limited to the period immediately following Donald's death. In 2004, Marjorie sold the home she and Donald shared and had her attorney send checks in the amount of $93,656.19 to Ray, Kathy, Julie, and Colleen. The attorney sent a letter with the checks, which stated,

> After your father died, it remained Marjorie's desire to share the proceeds from the sale of the house with all four children, two from your side of the family, and two from Marjorie's . . . . It was the intent that this sharing would be done after the death of both spouses, to the extent that there were assets not used up by the surviving spouse.

After Marjorie sold the home, Julie, and her husband ("the Divines") built a house on their property in California for Marjorie, where Marjorie lived rent-free. In 2009, the Divines moved to Idaho. Instead of moving with the Divines, Marjorie moved into a mobile home with her other daughter, Colleen. Colleen died in 2012. That same year, Marjorie sold her vehicle and

moved to Garden Plaza, an assisted living facility in Post Falls, Idaho, in part to be near the Divines. Marjorie never obtained an Idaho driver's license. Marjorie went to church services at Garden Plaza and walked to her bank and various stores. As of 2012, the monthly rent at Garden Plaza was $2,000 per month with a four percent annual increase.

Marjorie lived at Garden Plaza for one year before moving into the Divines' home in Rathdrum. Marjorie paid the Divines $2,000 per month for rent and $30 per month for her phone bill. After making the move to Rathdrum, Marjorie could no longer walk to her bank or local stores. Instead, Julie drove Marjorie where she needed to go.

In 2018, Julie was added as a joint account holder to Marjorie's Chase bank account and took care of all of Marjorie's online banking and transfers. Julie transferred $2,030 from Marjorie's bank account to her personal account every month. The record shows on August 3, 2018, Julie transferred $2,030 to her bank account, and on August 16, 2018, Julie transferred $2,530. The bank statements also revealed that Julie transferred $3,000 to her own account on April 3, 2017, and $11,000 to her own account on April 4, 2017. At trial, Julie could not recall why she transferred the $2,530 to her account in August 2018 but testified the April 2017 transfers were loans from Marjorie so Julie and her husband could build a shop on the property.

Marjorie amended the Trust several times following Donald's death. In 2002, Marjorie's changes included adding additional successor trustees. In 2007, Marjorie's changes included changing the successor trustees to Julie, with Colleen to take Julie's place in the event Julie was unable to serve and removing Kathy and Ray as primary beneficiaries following Marjorie's death. In 2010, Marjorie designated Julie and Colleen as co-trustees and reduced Kathy and Ray's special bequests from $200,000 to $100,000.

Marjorie was diagnosed with breast cancer in April or May 2017. On August 29, 2017, Julie drove Marjorie to meet with attorney Robert Green in Coeur d'Alene regarding another trust amendment. Green met with Marjorie alone. In the meeting, Marjorie explained that she was disappointed in her stepchildren because she believed they had treated her poorly since Donald's death. Marjorie and Green discussed eliminating or reducing the special bequests to Kathy and Ray.

During the meeting, Green asked Julie to leave the room and assessed Marjorie's mental capacity by using a four-page capacity worksheet contained in a legal publication. The worksheet required Green to engage in a detailed analysis of Marjorie's competency to determine whether

3

she was capable of proceeding with the trust amendment. The worksheet contained areas for Green to evaluate Marjorie's cognitive functioning, emotional functioning, and behavioral functioning. It also contained sections for Green to evaluate the relevant legal elements of capacity, contractual capacity and donative capacity, and another area to evaluate task-specific factors related to the capacity assessment. Finally, the worksheet contained an area for Green to note his preliminary conclusions about Marjorie's capacity and note key observations, conclusions, and actions to be taken.

Green made detailed notes in each area of the worksheet. Under cognitive functioning, Green wrote, "Marjorie communicates clearly, stays on track with the conversation and asks coherent questions," and "Marjorie is clear that she accepts assistance from her daughter, Julie, with bills, but insists she (Marjorie) is still in charge of everything."  Under emotional functioning, Green wrote, "No overt emotional distress, but Marjorie is experiencing some anxiety because she is seriously considering disinheriting her stepchildren, but is concerned doing so may be disrespectful to her late husband." Under behavioral functioning, Green wrote, "No obvious delusions. She does believe her stepchildren have treated her poorly since her husband's death. This belief seems rational though."

Green observed, "Despite her advanced age, Marjorie is presenting as very capable of making her own decisions with a high degree of understanding. She is debating what the 'right' thing to do is, but knows what she wants, and knows her options." Notably, regarding undue influence, Green wrote, "because Marjorie wishes to make Julie a current co-trustee, wants to give Julie the majority (potentially all) of the estate, because Julie provides care, support, transportation, etc. to Marjorie, undue influence is something to look out for." However, he added, "Marjorie understands my potential concerns – but is insistent that she makes her own decisions and has other resources (not Julie – such as friends) that she can rely on."

Green noted that Marjorie appreciated the consequences of her decision and "believe[d] her stepchildren will be very mad and take it out on Julie." Green concluded that Marjorie's capacity was "intact – No or very minimal evidence of diminished capacity." Green further noted:

> I am very satisfied that Marjorie has her capacity intact. Given the nature of the changes Marjorie wants to make in favor of her daughter Julie, and the current high level of involvement Julie has in Marjorie's life, I recognize the potential for Julie to unduly influence Marjorie. However, Marjorie is convincingly insistent

4

that Julie does not try to convince Marjorie to do anything, and that Julie would not be successful doing so even if she tried. I have agreed to begin drafting new EP docs [sic] for Marjorie as she decides whether she will completely remove her step-children as beneficiaries or will just reduce the size of their gifts in the trust.

The 2017 Trust documents are not in the record, but Green testified that Marjorie did not disinherit or reduce the $100,000 distributions to Kathy and Ray in 2017.

On May 29, 2018, Julie again drove Marjorie to Green's office to make further amendments to the Trust that eliminated Kathy's and Ray's bequests and named Julie as the sole beneficiary. Green testified that Marjorie called him before the May 29 appointment to say she wanted to make additional amendments to the trust. Green advised Marjorie that he would begin working on them but needed to meet with her in person to discuss the changes. Green testified that prior to the May 29 appointment he reviewed the capacity worksheet and his notes from the 2017 meeting. Additionally, Green testified that he asked Julie to leave the room during the meeting. Green also testified that during the May 29 meeting he did not notice any changes in Marjorie's mental capacity. Both Julie and Marjorie signed the 2018 Trust Amendment as co-trustees.

Following the May 29 meeting, Marjorie signed a typed document which stated:

To whom it may concern,

I Marjorie E Woodfin, regret to inform you that there are no beneficiaries to my estate other than Julie Divine as most of my money has been used for my care and provision. I wish for Julie to receive any remaining money due to the fact she has been my caregiver over the past several years.

Marjorie E Woodfin
/s/ Marjorie E. Woodfin
May 29, 2018.

Lisa Keating, Julie's daughter, typed the document for Marjorie. Marjorie died on October 12, 2018, at age 92. Contrary to Marjorie's May 2018 note, at the time of her death, the Trust had more than $450,000 in assets.

After learning about Marjorie's passing, Kathy called Julie to inquire about the Trust and Julie sent Kathy and Ray the May 29, 2018, letter. Kathy and Ray subsequently filed a complaint seeking declaratory relief. Kathy and Ray requested the district court to declare the 2018 amendments were void due to Julie's undue influence and order Julie to distribute $100,000 to Ray and $100,000 to Kathy.

Following a bench trial, the district court determined that the evidence "overwhelmingly supports a conclusion that Marjorie had full testamentary capacity when she amended the Trust on May 29, 2018." Kathy and Ray timely appealed.

## II.     ISSUES ON APPEAL

1. Whether the district court erred in concluding that Marjorie had testamentary capacity when she executed the 2018 Trust Amendment?

2. Whether the district court erred in concluding that Kathy and Ray failed to establish the 2018 Trust Amendment was the product of undue influence?

3. Whether the district court erred in concluding that Julie did not breach her fiduciary duties to Kathy and Ray?

4. Whether Kathy and Ray are entitled to attorney fees?

## III.     STANDARD OF REVIEW

"This Court's review of a trial court's conclusions following a bench trial is limited to determining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law." *Burns Concrete, Inc. v. Teton Cnty.*, 168 Idaho 442, 451, 483 P.3d 985, 994 (2020). A trial court's factual findings are reviewed for clear error and will not be disturbed if the findings are "supported by substantial and competent evidence, even if there is conflicting evidence." I.R.C.P. 52(a); *Capstar Radio Operating Co. v. Lawrence*, 160 Idaho 452, 459, 375 P.3d 282, 289 (2016) (citing *Backman v. Lawrence*, 147 Idaho 390, 394, 210 P.3d 75, 79 (2009)). "Substantial evidence is that which a reasonable trier of fact would accept and rely upon it in determining findings of fact." *Id.* Alternatively, this Court reviews questions of law de novo. *Siercke v. Siercke*, 167 Idaho 709, 713, 476 P.3d 376, 380 (2020) (citing *Zeyen v. Pocatello/Chubbuck Sch. Dist. No. 25*, 165 Idaho 690, 694, 451 P.3d 25, 29 (2019)).

## IV.     ANALYSIS

### A. The district court's conclusion that Marjorie possessed testamentary capacity when she executed the 2018 Trust Amendment is supported by substantial and competent evidence.

Kathy and Ray argue that the district court erred in determining that Marjorie had testamentary capacity when she signed the 2018 Trust Amendment because Marjorie did not understand the nature and extent of her property, as evidenced by the letter Marjorie signed on May 29, 2018. Additionally, Kathy and Ray argue that there was insufficient evidence of capacity because Green did not complete a new capacity worksheet during the May 2018 meeting. Julie argues that substantial and competent evidence supported the district court's

6

conclusion that Marjorie possessed testamentary capacity when she signed the 2018 Trust Amendment.

"Testamentary capacity is a question of fact to be determined upon the evidence in the individual case." *In re Heazle's Est.*, 74 Idaho 72, 76, 257 P.2d 556, 558 (1953). The general requirement for testamentary capacity is that,

> The testator must at the time of making his will have sufficient mentality to enable him to know what property he possesses and of which he is making a testamentary disposition, to consider and know who are the natural objects of his bounty, and to understand what the disposition is that he is making of his property by his will.

*Id.* (quoting *In re Johnson's Est.*, 13 N.W.2d 852, 855 (Mich. 1944)).

The district court concluded that the evidence "overwhelmingly" supported the conclusion that Marjorie had full testamentary capacity when she executed the 2018 Amendment. The district court responded to Kathy and Ray's contention that the May 29, 2018, letter indicated Marjorie did not understand the nature of her property, by explaining,

> While that could be the case, it could also evidence an intentional untruth or misdirection on Marjorie's part. The court does not find that Marjorie did not know what she had; evidence concerning her 2017 and 2018 Trust amendments belies that. It appears to the court that Marjorie had sufficient knowledge of the extent of her estate [and] that she was conflicted about how it was to be divided at her death. If she had negligible assets in the last year or so of her life, she might have amended the Trust to leave all to Julie, but she likely would not have been so conflicted about it. In addition, her dealings with Robert Green, the estate attorney, reveal that she knew she had a sizeable estate.

Kathy and Ray's argument that the district court erred in concluding Marjorie had sufficient testamentary capacity to make the 2018 Trust Amendment largely focuses on the evidence they presented at trial. Kathy and Ray fault the district court for not giving more weight to evidence and testimony establishing that: (1) the contents of the May 28 note in which Marjorie misstated the extent of the Trust's assets; (2) Marjorie was using pain medication in the timeframe shortly before signing the 2018 Trust Amendment; (3) Green did not question Marjorie about use of pain medication during the May 28 meeting or do a new competency worksheet; and (4) the elimination of the special bequests to Kathy and Ray was unnatural because it negated a decades-old bequest.

While Kathy and Ray may not agree with the district court's factual findings, "[w]e will not substitute our view of the facts for the view of the district court." *Crea v. Crea*, 135 Idaho

246, 249, 16 P.3d 922, 925 (2000). Here, the district court relied on testimony from Green and his notes on the competency worksheet. We recommend the use of such a tool for attorneys who practice estate planning. In this instance, Green's use of the worksheet captured thorough and detailed observations of Marjorie's capacity and the analysis of factors that could indicate undue influence. After completion of the competency worksheet, Green concluded Marjorie may have been conflicted but knew the property she possessed, knew the natural object of her bounty, and understood the disposition she was considering. The district court also considered testimony from Marjorie's family members, clergy, medical staff, and friends who testified to facts indicating that Marjorie had sufficient testamentary capacity. A reasonable trier of fact would accept and rely on this evidence in making findings of fact.

Further, in its written decision the district court considered the May 29, 2018, letter and concluded that while the letter could be evidence that Marjorie did not know the extent of her estate, it could also be evidence of an intentional mistruth on Marjorie's part. After considering all the evidence, the district court found that Marjorie had sufficient knowledge of her estate and was conflicted about how to divide it upon her death. The district court also considered the testimony of Marjorie's hospice nurse concerning the pain medications. The nurse testified that Marjorie did not want to be sedated, so they were very careful with the drugs and that she did not observe Marjorie exhibit signs of impaired memory, judgment, or coordination. The district court further recognized that Green reviewed the 2017 competency worksheet prior to his meeting with Marjorie in May 2018 and determined there was no change to her competency. It does not appear that Kathy and Ray argued to the district court that the 2018 Trust Amendment was unnatural and, therefore, evidenced Marjorie's lack of testamentary capacity.

It is within the province of the district court to weigh conflicting evidence. *Crea*, 135 Idaho at 249, 16 P.3d at 925. Kathy and Ray's argument simply invites us to reweigh the evidence, which we will not do. The district court's findings of fact are supported by substantial and competent evidence and, therefore, we affirm the district court's decision that Marjorie had sufficient testamentary capacity when she made the 2018 Trust Amendment.

**B. The district court properly concluded that Kathy and Ray failed to establish their undue influence claim.**

Kathy and Ray argue that the district court erred in concluding Julie did not unduly influence Marjorie into making the 2018 Amendment because: (1) it failed to apply a presumption of undue influence, and (2) absent the presumption, they established all four

elements of undue influence. Julie contends that Kathy and Ray are asking this Court to re-weigh the evidence.

Undue influence is recognized when evidence indicates that a party's influence amounted to coercion, which destroyed the testator's free agency. *In re Stibor's Estate*, 96 Idaho 162, 165, 525 P.2d 357, 360 (1974); *Green*, 161 Idaho at 681, 389 P.3d at 967. Generally, four elements must be shown to support a claim that an instrument was the product of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence. *Green v. Green*, 161 Idaho 675, 681, 389 P.3d 961, 967 (2017). This Court has, however, recognized two circumstances which give rise to a rebuttable presumption of undue influence: (1) when a beneficiary of an estate is also a fiduciary of the testator and (2) when the alleged wrongdoer was in a "confidential relationship" with the donor and there were suspicious circumstances surrounding the execution of the trust. *Id.*; *See also In re Estate of Smith*, 164 Idaho 457, 474, 432 P.3d 6, 23 (2018); *Nelson v. Nelson*, 170 Idaho 102, ___, 508 P.3d 301, 327–28 (2022). A trial court's decision regarding undue influence is a question of fact and "will not be disturbed where there is competent evidence to support [the finding]." *King v. MacDonald*, 90 Idaho 272, 280, 410 P.2d 969, 973 (1965).

1. The district court properly determined that there was no presumption of undue influence.

Kathy and Ray first argue that the district court erred in failing to apply a rebuttable presumption of undue influence because they established facts indicating that both circumstances this Court has recognized were present in this case. Julie argues that the district court properly relied on the evidence at trial to determine that there were no circumstances that gave rise to a presumption of undue influence.

The district court determined that Kathy and Ray failed to present "legal support for the notion that an adult child caring for an elderly parent becomes the parent's fiduciary or takes on a fiduciary duty." The district court explained that Kathy and Ray's evidence focused on Julie's fiduciary duty to them but failed to establish that Julie had a fiduciary duty to Marjorie. Additionally, the district court explained that "even if there is such a duty, [Kathy and Ray] failed to establish a nexus between any fiduciary duty of Julie to Marjorie and Marjorie's changes to the Trust in 2018."

9

Addressing the first circumstance that gives rise to a presumption of undue influence, this Court has recognized that "a rebuttable presumption of undue influence is created where a beneficiary of the testator's will is also a fiduciary of the testator." *Green*, 161 Idaho at 681, 389 P.3d at 967 (quoting *In re Estate of Conway*, 152 Idaho 933, 939, 277 P.3d 380, 386 (2012)). To trigger this presumption, "opponents of an instrument must show some nexus between the fiduciary relationship and the execution of the donative instrument." *Id.* The mere existence of this one circumstance is not enough to apply the presumption. To trigger the presumption, a proponent must also show "some nexus between the fiduciary relationship and the execution of the donative instrument." *Green*, 161 Idaho at 681, 389 P.3d at 967; *In re Estate of Smith*, 161 164 Idaho at 474, 432 P.3d at 23.

Here, the district court determined that although Julie was a beneficiary at the time the 2018 Trust Amendment was signed, Kathy and Ray failed to establish that Julie owed Marjorie a fiduciary duty because Marjorie was not a beneficiary of the trust. On appeal, Kathy and Ray argue that the district court erred because they established that Julie was a beneficiary under the 2018 Trust Amendment and also owed fiduciary duties to Marjorie because Julie was a trustee and Marjorie was a beneficiary of the trust. However, Kathy and Ray fail to cite to any evidence to support their contention that Marjorie was a beneficiary when she signed the 2018 Trust Amendment. Rather, the evidence in the record indicates that when Marjorie signed the 2018 Trust Amendment the 2010 Trust Amendment did not identify her as a beneficiary of the trust. The 2017 Trust Amendment is not in the record, so the 2010 Trust Amendment is the last version of the Trust documents in the record on appeal. Kathy and Ray have failed to provide factual support for their contention that Julie owed a fiduciary duty to Marjorie at the time she signed the 2018 Trust Amendment. As such, there is substantial and competent evidence to support the district court's finding that Kathy and Ray failed to establish that the first circumstance giving rise to a presumption of undue influence applied in this case.

Turning to the second circumstance that this Court has recognized can give rise to a presumption of undue influence, this Court has on several occasions favorably cited to comment f of the Restatement (Third) of Property §8.3, which provides that "[a] presumption of undue influence arises if the alleged wrongdoer was in a confidential relationship with the donor and there were suspicious circumstances surrounding the preparation, formulation, or execution of the donative transfer...." *Nelson*, 170 Idaho at ___, 508 P.3d at 327–28; Green, 161 Idaho at 681,

389 P.3d at 967; *In re Estate of Smith*, 164 Idaho at 474, 432 P.3d at 23. Although this Court has never expressly adopted the presumption identified in this comment, Kathy and Ray argued, both below and on appeal, that the presumption should be applied in this case. The presumption is consistent with the first circumstance discussed above, but simply expands the types of confidential relationships which can give rise to the presumption. The presumption is also consistent with the definition of undue influence that we have consistently applied over the years. We therefore expressly adopt the presumption identified in comment f of the Restatement (Third) of Property §8.3 and will apply it in this case.

Comment g of the Restatement (Third) of Property §8.3 defines the term "confidential relationship" and states, "the term 'confidential relationship' embraces three sometimes distinct relationships—fiduciary, reliant, or dominant-subservient." Restatement (Third) of Property (Wills & Don. Trans.) § 8.3 cmt. g (2003). Whether a confidential relationship exists is a question of fact. *See id.*

First, a fiduciary relationship "arises from a settled category of fiduciary obligation. Some fiduciary relationships are between the donor and a hired professional." *Id.* Examples of such a relationship are that between an attorney and client, between an institutional trustee and the beneficiaries of the trust, or between an institutional guardian or conservator and her ward or protected person. *Id.* Comment g goes on to state that "[o]ther fiduciary relationships are not necessarily between the donor and a hired professional." *Id.* Examples of such a relationship are a close family member or trusted friend operating under a power of attorney, or a close family member or a trusted friend acting as an individual trustee, guardian or conservator without payment. *Id.*

Next, a reliant relationship exists where "there was a relationship based on special trust and confidence, for example, that the donor was accustomed to being guided by the judgment or advice of the alleged wrongdoer or was justified in placing confidence in the belief that the alleged wrongdoing would act in the interest of the donor." *Id.* Examples include the relationship between a financial adviser and customer or between a doctor and patient. *Id.*

Finally, a dominant-subservient relationship exists when "the donor was subservient to the alleged wrongdoer's dominant influence. Such a relationship might exist between a hired caregiver and an ill or feeble donor or between an adult child and an ill or feeble parent." *Id.*

11

Kathy and Ray's arguments allege two types of confidential relationship existed between Julie and Marjorie—a fiduciary relationship and a dominant-subservient relationship. Regarding the first type of confidential relationship, as discussed above, there is no evidence that Marjorie was a beneficiary of the trust at the time she signed the 2018 Trust Amendment. As a result, Kathy and Ray failed to establish that a fiduciary relationship existed between Julie and Marjorie at the time Marjorie signed the 2018 Amendment.

We next turn to their allegation that Julie had a dominant-subservient relationship with Marjorie. Kathy and Ray argue that Marjorie relied on Julie for her "housing, cell phone, transportation, food, medical care, support, and maintenance." Additionally, Kay and Ray contend that Julie controlled Marjorie's finances, which included her social security and investment deposits, and only gave Marjorie cash periodically. Finally, Kathy and Ray argue that Julie gave Marjorie a false understanding of her financial situation. Julie maintains that while she cared for her mother, Marjorie made all of the decisions about her finances and the trust. Julie further supports her argument with the fact that she was not present in Green's office when Green discussed trust changes with Marjorie.

The district court failed to address this type of confidential relationship in its order, and instead confined its discussion on the confidential relationship analysis to whether a fiduciary relationship existed. As noted above, whether a confidential relationship existed is a question of fact. "When the court sits as the trier of fact, it is charged with the duty of preparing findings of fact and conclusions of law in support of the decision which it reaches." *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 225, 646 P.2d 988, 996 (1982) (citing I.R.C.P. 52(a)).

> The purpose behind requiring the court to "find the facts specially and state separately its conclusions of law thereon" is to afford the appellate court a clear understanding of the basis of the trial court's decision, so that it might be determined whether the trial court applied the proper law to the appropriate facts in reaching its ultimate judgment in the case. The absence of findings and conclusions may be disregarded by the appellate court only where the record is clear, and yields an obvious answer to the relevant question. Absent such circumstances, the failure of the trial court to make findings of fact and conclusions of law concerning the material issues arising from the pleadings, upon which proof is offered, will necessitate a reversal of the judgment and a remand for additional findings and conclusions, unless such findings and conclusions would not affect the judgment entered, and, where there is no evidence which would support further findings material to the judgment, the judgment will simply be reversed, the plaintiff having failed to prove his claim.

*Id.* (internal citations omitted).

Reviewing the entirety of the district court's detailed, forty-page opinion reveals that although the district court did not make specific findings of fact concerning whether a dominant-subservient relationship existed, it did address the facts and arguments asserted by Kathy and Ray in the context of whether they met their burden on the four elements of undue influence. More specifically, the district court considered their arguments in relation to the second element—whether Marjorie was subject to influence—and made the following findings of fact:

> There is little to no evidence that Marjorie was subject to influence by Julie regarding Kathy and Ray. In fact, other evidence suggests Marjorie was not subject to influence by Julie:
>
> - Marjorie's acknowledging Robert Green's concern about the potential for Julie to exercise undue influence over her mother, and assuring him otherwise;
> - Marjorie's being "convincingly insistent" that Julie did not tell her what to do;
> - The observations of clergy that the relationship was appropriate and that Julie did not boss Marjorie around;
> - Testimony from many witnesses about Marjorie's happiness and self-determination;
> - Testimony that Marjorie was insistent about engaging in activities such as going out to dinner often and partaking in risky, but exhilarating, sports such as sky-diving, parasailing, and zip-lining;
> - Testimony from witnesses that one didn't tell Marjorie what to do.
>
> Considering all of the evidence and circumstances, the court cannot say that under an undue influence analysis that Marjorie was subject to influence.

These factual findings are clear and yield the obvious answer that Marjorie was not subservient to Julie's influence. As a result, we conclude that they were not in a dominant-subservient relationship. Because the district court's other findings of fact clearly resolve this issue, we do not need to remand this matter for further fact finding. We therefore conclude that Kathy and Ray failed to establish that a confidential relationship existed between Julie and Marjorie at the time Marjorie signed the 2018 Trust Amendment and affirm the district court's decision that they failed to establish that a presumption of undue influence should be applied in this case.

2. The district court properly determined that Kathy and Ray failed to establish the four elements of undue influence.

As an alternative to establishing that a presumption of undue influence applies, Kathy and Ray contend that they established the four elements of undue influence: "(1) a person who is

subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence." *In re Estate of Smith*, 164 Idaho at 475, 432 P.3d at 24 (quoting *Green*, 161 Idaho at 680, 389 P.3d at 966). Although there is no set order for evaluating these elements, all four must be proven to support a claim of undue influence. *Green*, 161 Idaho at 680, 389 P.3d at 966.

### i. *Susceptibility*

Kathy and Ray argue that Marjorie was subject to influence because of her advanced age, health problems, and use of pain medications shortly before making the 2018 Amendment. Additionally, Kathy and Ray argue that the facts here are "nearly identical" to the facts in *In re Estate of Smith*. Finally, Kathy and Ray argue that Green's notes, which indicated that Marjorie was struggling with anxiety because she was considering disinheriting her stepchildren and did not want to disrespect her late husband, show that Marjorie was susceptible to influence. Julie maintains that this case is distinguishable from *In re Estate of Smith* and that the district court's conclusion was supported by the evidence.

In its written decision, the district court recognized that Marjorie's age and breast cancer diagnosis could leave her subject to undue influence. The district court identified and considered facts advanced by Kathy and Ray that could suggest Marjorie was subject to undue influence. The district court weighed these facts against the facts advanced by Julie that suggested Marjorie was not subject to Julie's influence. The district court also considered the testimony of multiple witnesses that suggested Marjorie did what she wanted and was not subject to Julie's influence, as well as Attorney Green's observations and notes from the August 2017 and May 2018 meetings. After weighing the evidence, the district court concluded that Marjorie was not subject to undue influence.

"Susceptibility, as an element of undue influence, concerns the general state of mind of the testator: whether he was of a character readily subject to the improper influence of others." *In re Estate of Smith*, 164 Idaho at 476, 432 P.3d at 25 (quoting *Gmeiner v. Yacte*, 100 Idaho 1, 7, 592 P.2d 57, 63). This is the most difficult element to establish because of the complicated nature of "establishing the subjective state of mind of [the] decedent." *Id.* "The court will look closely at transactions where unfair advantage appears to have been taken of one who is aged, sick or enfeebled." *Id.* A court must consider, "the testator's incapacity to resist pressure and his susceptibility to deceit, whether in general or by a particular person," which includes, "his

state of affections or dislike for particular persons, benefited or not benefited by the will." *King*, 90 Idaho at 279, 410 P.2d at 972 (citation omitted).

This case is distinguishable from *In re Estate of Smith*. There, this Court held that the magistrate court's conclusion that the testator was subject to influence from her son was supported by substantial and competent evidence. *Id.* This Court explained that while the record showed the testator's strong-willed nature, which "may be suggestive of the fact that she was not susceptible to influence *generally*," the evidence also gave rise "to a strong inference that she was susceptible to [her son's] *specific* influence." *Id.* (emphasis in original). The facts that supported the magistrate court's decision were the son's role as his mother's attorney who created the will, which bequeathed his mother's estate to Smith alone and disinherited Smith's brother and sister, and his status as the sole witness present when his mother executed the will. *Id.* at 476–77, 432 P.3d at 25–26. These facts distinguish *In re Estate of Smith* from the facts in this case. Here, Green provided independent legal advice to Marjorie. Green identified potential concerns of undue influence in 2017 and discussed them with Marjorie outside of Julie's presence. Green again met with Marjorie in May 2018, outside of Julie's presence, concerning the final trust amendment. Finally, Green drafted the 2018 Trust Amendment that gave rise to this litigation. There is no evidence suggesting Marjorie was subject to the undue influence at issue in *In re Estate of Smith*.

Kathy and Ray again ask this Court to substitute our own factual findings for those of the district court. This "Court will not disturb findings of fact on appeal that are supported by substantial and competent evidence." *Green River Ranches, LLC v. Silva Land Co., LLC*, 162 Idaho 385, 389, 397 P.3d 1144, 1148 (2017). The district court's findings on susceptibility are supported by substantial and competent evidence that a reasonable trier of fact would rely on when making findings of fact. Accordingly, we affirm the district court's decision that Marjorie was not susceptible to influence.

### ii. Opportunity to exert undue influence

This Court has referred to this element as the easiest to establish and has stated it can be found if the beneficiary lived with the testator or grantor. *Gmeiner*, 100 Idaho at 8, 592 P.2d at 64. As neither party contends the district court erred on this point, we affirm the district court's conclusion that Julie had an opportunity to exert undue influence.

### iii.     *Disposition to exert under influence*

Kathy and Ray argue that Julie's repeated scheduling of attorney appointments and instructions to prepare documents to disinherit, Julie's directive that she be the only witness for the signing of the 2018 Trust Amendment, Julie's decision to schedule the May 2018 appointment at 4:30 p.m., and the fact the May 2018 meeting only lasted 17 minutes are all evidence of Julie's disposition to exert undue influence. Additionally, Kathy and Ray contend that Julie controlled Marjorie's knowledge of her finances, which proves Julie's disposition to exert undue influence. Julie argues that the fact that the May 2018 meeting lasted seventeen minutes only shows that Marjorie's decision had been made. Julie also contends that she never orchestrated the attorney meetings, but instead, merely drove her mother to the meetings.

In its written decision the district court concluded that while the evidence on this issue is close, it was unable to conclude that Julie had a disposition to exert undue influence,

> Although Julie drove Marjorie to Robert Green's office for the three visits (the August 29, 2017, office conference; the September 7, 2017, signing of the Trust documents; the May 29, 2018, office conference and signing), and was in the August 29, 2017, meeting for a period of time, Mr. Green testified that he met with Marjorie alone and discussed Marjorie's concerns, desires, and wishes with her; and frankly discussed the potential for Julie to exercise undue influence. Marjorie assured Mr. Green that Marjorie was in charge of her estate and made her own decisions. Thus, Marjorie received advice and counsel from a disinterested party concerning her intentions to potentially disinherit her step-children, and ultimately her actual disinheritance of them.

When considering the disposition to exert undue influence, this Court looks to "whether or not the alleged undue influencer took an active part in preparation and execution of the will or deed." *Gmeiner*, 100 Idaho at 8, 592 P.2d at 64. Therefore, it is less likely to find undue influence, "where it can be shown that the grant was not made at the request, suggestion or direction of the grantee, where the grantee was not active in the preparation or execution of the documents, or where disinterested advice was sought and third parties were informed of the grantor's intentions." *Id.* (internal citations omitted). Additionally, courts analyzing this element should also consider "the alleged influencer's attempts at undermining bequests to the natural heirs" and whether the recipient of a bequest has "been responsible for alienating the affections of the testator-grantor from the other members of his or her family." *Id.*

The district court's conclusion on this element is supported by substantial and competent evidence. The district court weighed evidence that Julie and Marjorie were jointly listed on

16

Marjorie's bank account and that Julie transferred funds from Marjorie's account to her own personal account against competing evidence, including Green's notes and his testimony that during the May 2018 meeting, where Julie was asked to leave, Marjorie assured him that Julie had nothing to do with the decision to eliminate the special bequests to Kathy and Ray. We will not substitute our factual findings for those of the district court. Accordingly, we affirm the district court's decision that Marjorie was not susceptible to Julie's influence.

### iv. *A result indicating undue influence*

Kathy and Ray argue that the 2018 Amendment is suspicious because it was only after Marjorie moved in with Julie that the Special Bequests to Kathy and Ray were eliminated. Julie does not address this element.

The district court recognized that the sudden disinheritance of Marjorie's stepchildren was a significant change from the 1999 Trust as originally drafted and amended. The district court also acknowledged that the May 29, 2018, note included false information about the remaining Trust assets. After considering the evidence on this issue the district court concluded:

> Overall, the result does not indicate undue influence, but the considered decision of an independent woman who determined that all of her sizable estate should go to her daughter, Julie, with whom she was very close and who had opened her home, time and again, to Marjorie. The circumstances show that Marjorie wrestled with the idea of disinheriting Kathy and Ray for nearly one year before she actually did so, that it caused her some distress to do so based on her love and respect for her husband, Don, but that she ultimately justified her decision and felt comfortable with it. Given that Marjorie had in 2004 distributed over $94,600 to each of the four children of Don and Marjorie from the proceeds of the sale of the Kasota Way house, one could assume that Marjorie rationalized that she had done her duty.

A result indicates undue influence if "[the] result is suspicious if it appears 'unnatural, unjust or irrational.'" *In re Estate of Smith*, 164 Idaho at 478, 432 P.3d at 27 (quoting *Gmeiner*, 100 Idaho at 7, 592 P.2d at 63). Unnatural dispositions raise "a 'red flag of warning,' and cause the court to scrutinize the entire transaction closely." *Id.* "On the other hand, apparently unnatural dispositions may be sufficiently explained. Indeed, the law must respect even an unequal and unjust disposition once it is determined that such was the intent of the grantor or testator." *Gmeiner*, 100 Idaho at 7, 592 P.2d at 63. (Citation and internal quotation marks omitted).

The district court recognized the unnatural disposition of the 2018 Trust Amendment. The district court also determined that the unnatural disposition was justifiable because Julie was

always there for her mother. Once again, the district court expressly weighed conflicting evidence in reaching this conclusion. After considering this evidence, the district court ultimately relied on the fact that the Divines were the natural objects of Marjorie's affection and gratitude. We again decline to substitute our factual findings for those of the district court. We affirm the district court's determination that the result of the 2018 Trust Amendment did not indicate undue influence.

## C. Kathy and Ray failed to preserve a claim for breach of fiduciary duty.

Finally, Kathy and Ray argue that Julie breached her fiduciary duties to the beneficiaries of the Trust by using trust funds for personal expenses, self-dealing, failing to inform the beneficiaries of the changes to the Trust, failing to provide a Trust accounting and breaching her duty of loyalty to the beneficiaries. Julie argues that Kathy and Ray were not beneficiaries after Marjorie made the 2018 Amendment and, therefore, she did not owe them fiduciary duties. Additionally, Julie argues that the district court's decision was supported by substantial and competent evidence. The district court determined that Julie did not breach her fiduciary duties under the Trust.

We conclude that Kathy and Ray waived this issue because there is no indication in the record on appeal that they pleaded or argued a claim for breach of fiduciary duty before the district court. A party can refine legal arguments on appeal regarding an issue heard and decided by a lower court, "but in fairness to the district court and the opposing party, [this Court] cannot usurp the district court's role by deciding new legal issues in the first instance." *Siercke v. Siercke*, 167 Idaho 709, 716, 476 P.3d 376, 383 (2020). This Court "will not hold that a trial court erred in making a decision on an issue or a party's position on an issue that it did not have the opportunity to address." *Gonzalez*, 165 Idaho at 99, 439 P.3d at 1271.

At oral argument before this Court, counsel for Kathy and Ray argued that the specific breaches of fiduciary duty were tried by consent. Idaho Rule of Civil Procedure 15(b) states, "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." I.R.C.P. 15(b)(2). However, "[a]n unpleaded issue is not tried by express or implied consent when nothing in the record indicates the issue was litigated at trial." *Hull v. Giesler*, 156 Idaho 765, 777, 331 P.3d 507, 519 (2014).

Kathy and Ray's complaint does not include a claim for breach of fiduciary duty. Their pretrial brief spends two paragraphs discussing how Julie engaged in wrongful conduct in the

18

administration of the Trust, but that argument does not mention a breach of fiduciary duty. During closing argument, Kathy and Ray asserted for the first time that Julie breached a fiduciary duty to properly account for Trust assets. The district court devoted three sentences of its 40-page decision to the breach of fiduciary duty assertion. It first noted that Kathy and Ray did not present evidence or argument concerning a separate breach of fiduciary duty claim. The district court then concluded that because Kathy and Ray failed to establish the four elements of undue influence, they also failed to establish that Julie breached her fiduciary duties to them.

The record does not indicate that the claim was either plead or litigated below. As such, Kathy and Ray failed to preserve a claim for breach of fiduciary duty, and we therefore decline to address it on appeal.

**D. We decline to award attorney fees on appeal.**

Kathy and Ray requested attorney fees and costs in their reply brief but did not request them in their opening brief. Similarly, Julie requested attorney fees at oral argument but never requested them in her respondent's brief. "In order to be entitled to attorney fees on appeal, authority and argument must be presented in the first brief filed by a party with this Court." *Aguilar v. Coonrod*, 151 Idaho 642, 650, 262 P.3d 671, 679 (2011) (quoting *Carroll v. MBNA Am. Bank*, 148 Idaho 261, 270, 220 P.3d 1080, 1089 (2009)). Because no party presented authority or argument requesting attorney fees and costs in their first brief on appeal, we decline to award attorney fees on appeal. Julie is the prevailing party on appeal, however, and is entitled to an award of costs on appeal pursuant to I.A.R. 40.

## V.    CONCLUSION

For the foregoing reasons, we affirm the district court's findings of fact and conclusions of law. We award costs on appeal to Julie.

Chief Justice BEVAN and Justices BRODY, STEGNER, and MOELLER **CONCUR.**

19