## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 49694

| | | |
|---|---|---|
| RODNEY BRYAN DICKENSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | Moscow, April 2023 Term |
| v. | ) | |
| | ) | Opinion Filed: June 7, 2023 |
| BENEWAH COUNTY SHERIFF, | ) | |
| DAVID C. RESSER as SHERIFF; and | ) | Melanie Gagnepain, Clerk |
| BENEWAH COUNTY through its | ) | |
| BOARD OF COMMISISONERS, | ) | |
| JACK A. BUELL, as its CHAIR; and | ) | |
| JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Benewah County. Barbara Duggan, District Judge.

The district court's decision is <u>affirmed</u>.

Douglas A. Pierce, Attorney at Law, Coeur d'Alene, attorney for Appellant. Douglas A. Pierce argued.

Lake City Law Group, PLLC, Coeur d'Alene, attorney for Respondents. Jennifer Fegert argued.

_____

BEVAN, Chief Justice

This is an appeal of a whistleblower case brought by Rodney Bryan Dickenson against the Benewah County Sheriff's Office ("BCSO"), Benewah County Board of Commissioners, and former Benewah County Sheriff, David Resser (collectively, the "County"). BCSO told Dickenson that his employment was being terminated for violating law enforcement policy and ethics. Dickenson alleges his termination violated Idaho's Whistleblower Act because he was terminated for secretly recording meetings with Sheriff Resser and Undersheriff Anthony Eells to document malfeasance and the illegal activities of some deputies. After unsuccessful attempts at administrative appeals, Dickenson filed a complaint in district court alleging wrongful termination

1

from his employment as a sergeant, in violation of Idaho Code sections 6-2101-2109, "because he communicated in good faith, with reasonable basis in fact, regarding a violation or suspected violation of the law." The County moved for summary judgment on Dickenson's complaint, which the district court granted, concluding Dickenson could not show he was fired for engaging in a protected activity. Dickenson timely appeals. For the reasons discussed below, we affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

BCSO is a law enforcement agency in St. Maries, Idaho. Resser was the elected sheriff of Benewah County, and Eells was the undersheriff. BCSO employed Dickenson from January 1999 until August 28, 2019. Dickenson's most recent position with BCSO was as a patrol sergeant.

At his request, Dickenson met with Sheriff Resser and Undersheriff Eells ("Resser" and "Eells") on May 3, 2019. The purpose of the meeting is disputed. According to Resser, Dickenson requested the meeting to discuss Dickenson's belief that Eells was undermining Dickenson's authority as a patrol sergeant. According to Dickenson, he called the meeting to discuss a deputy's improper use of a K-9 and a patrol officer's report that did not match the officer's video recording. Immediately before the meeting on May 3, Dickenson parked his patrol vehicle near the Sheriff's Office. Dickenson's patrol vehicle was equipped with an audio and video camera that, when activated, recorded audio and video up to five-hundred feet away from the patrol car. Dickenson allegedly parked his vehicle close enough so that the on-board audio would pick up his conversation with Resser and Eells; the recording device being activated from a microphone on Dickenson's person. At some point Eells left the meeting. Resser then asked Dickenson if he was recording the meeting. Dickenson replied, "not with this," and held up his personal cell phone or his body camera. Resser explained he was making sure because Dickenson had commented that he "recorded everything." Dickenson continued to deny that he was recording this conversation.

When Eells returned to the meeting, Dickenson, Eells, and Resser discussed the conflict between Eells and Dickenson. After Dickenson left, Resser told Eells he thought Dickenson had been recording the meeting, but that Dickenson had denied doing so. Later, Eells told Resser he had discovered a recording on the BCSO media file folder for deleted videos. Eells and Resser listened to the recording, and Resser recognized it as an audio recording from the meeting earlier in the day. Following Resser's discovery, Dickenson was removed from his position as a supervisor.

2

On May 7, 2019, Resser met with Benewah County Prosecutor, Brian Thie, to discuss the recording Dickenson had made. Thie told Resser he would investigate the incident and let Resser know what he found. The next day, Eells and Resser met with Thie. Thie told both that Dickenson's decision to record the conversation and then lie about it violated policy and could also raise *Brady*[1] issues anytime Dickenson was called to testify for the State in the future, because a prosecuting attorney would have an obligation to disclose Dickenson's untruthfulness. Later that day, Eells and Resser met with Dickenson and again asked Dickenson if he had recorded their May 3, 2021, meeting. Although Dickenson first denied it, Resser said that he already knew Dickenson had recorded the meeting. Dickenson ultimately admitted he was recording the current meeting, but continued to deny he recorded the May 3, 2019, meeting. At that time, Resser requested that Eells retrieve the SD card from Dickenson's patrol vehicle. The SD card purportedly contained recordings from both the May 3rd and May 8th meetings. After Eells was asked to retrieve the audio, Dickenson admitted that he had recorded the meeting on May 3, 2019. After that admission, Resser told Dickenson he was being placed on administrative leave with pay, pending further investigation.

On May 17, 2019, Resser sent Dickenson a "Notice of Suspension with Pay Pending Investigation" letter. On May 30, 2019, Resser sent Dickenson a "Notice of Findings and Proposed Disciplinary Action: Termination from Sheriff Department[.]" That notice outlined the policies Dickenson had allegedly violated and the proposed disciplinary action, which was termination of employment.

Among the findings of the investigation outlined in the letter, Dickenson was advised that he had violated multiple policies in BCSO's and Benewah County's personnel policy manuals that (1) set forth a code of ethics for officers to abide by, (2) prohibited employees from willingly giving false information, and (3) prohibited the unauthorized recording of conversations with other members of the Sheriff's Office. An amended notice of findings of investigations later added two more alleged violations: disloyalty to the Sheriff's Office and violating a rule established by an appointed official.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that suppression of evidence favorable to the defendant violates due process when the evidence is material to guilt or punishment).

On June 26, 2019, the Benewah County Board of Commissioners held a pre-termination hearing. Dickenson admitted recording the May 3, 2019, meeting with Resser and Eells. Even so, Dickenson alleged for the first time at that hearing that the recordings were lawful because they were to protect him from "undermining actions of the undersheriff." During the hearing, Dickenson also alleged wrongdoing by other BCSO deputies and introduced a document outlining several serious allegations. Dickenson gave a copy of the document to Resser. That document was attached to Resser's affidavit in the record, but the document is not signed or dated.

Still, when Resser received the document at the pre-termination hearing, he advised Dickenson that the Sheriff's office would investigate Dickenson's allegations. Resser later assigned Detective Mike Richardson to do so. On July 23, 2019, Resser sent Dickenson an amended notice of findings from the investigation, which reflected that Dickenson had made allegations against other deputies at the hearing. The amended notice explained that the report had been investigated, and the allegations had been determined to be "unfounded, previously handled through disciplinary action, not sustained by evidence, or the acts complained of were otherwise lawful and proper." Then, on August 28, 2019, Dickenson was served with notice of termination and informed that his employment was being terminated for cause due to violating BCSO's and Benewah County's personnel policy directives.

Dickenson appealed his termination to the Benewah County Board of Commissioners. On November 25, 2019, the Commissioners held an appeal hearing, and Dickenson presented evidence and oral argument. The record contains no transcript from the hearing, none of the actual evidence presented, and no description of the evidence presented. The Commissioners upheld the termination of Dickenson's employment. Dickenson then filed a complaint and demand for jury trial in Benewah County district court. Dickenson's complaint alleged a violation of the Idaho Protection of Public Employees Act (Whistleblower Act) and sought reinstatement to his position or an equivalent position, as well as civil fines under Idaho Code section 6-2106(6), attorney fees and costs, and other equitable relief as applicable.

Roughly two years later, the County moved for summary judgment. In response to the County's motion, Dickenson filed an affidavit in which he alleged:

> 5. About two years into Sheriff Resser's term, it came to my attention that there were serious problems regarding improper and illegal actives [sic] on behalf of [three] Deputies.

4

6. About the same time, Sheriff Resser suffered a stroke. Shortly after the stroke, he announced that all personnel issues, and in fact general interactions with him regarding department issues, were to go through the Undersheriff, Anthony Eells.

7. By way of example regarding the problems that I tried to report to the Sheriff about, were including but not limited to: illegal arrests, illegal searches and seizures, misstatements in police reports, improper use of confidential informants, and improper use of the K-9 unit.

Dickenson also stated in his affidavit that he

spent over six months trying to (report) talk to Sheriff Resser about the illegal and unconstitutional activities going on with various deputies, including [the Sheriff's] former son-in-law. I intentionally recorded two conversations so I could verify my attempts. First, on May 3, 2019, in the meeting with the Sheriff and Undersheriff, which I called. The Undersheriff did leave that meeting, during which time the Sheriff asked me if I was recording him, and I held out my body camera and said, "not with this." I was intentionally recording him with the audio of the dash cam, the video shows the front and rear of my patrol vehicle (a pickup) on the street out of the courthouse by the curb. I did not intend to record on May 4 as evidenced by the poor quality of the recording because I parked my vehicle far away, and I did not call any meeting on May 4.

The district court heard oral arguments on the County's motion for summary judgment on March 4, 2022, and ultimately granted the motion on March 28, 2022, concluding that Dickenson's bare allegations in the affidavit were insufficient to establish a genuine issue of material fact. The district court dismissed all claims against the County with prejudice. Dickenson timely appeals.

## II. STANDARDS OF REVIEW

"'This Court employs the same standard as the district court when reviewing rulings on summary judgment motions.'" *Owen v. Smith*, 168 Idaho 633, 640, 485 P.3d 129, 136 (2021) (quoting *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140–41, 456 P.3d 201, 209–10 (2019)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting I.R.C.P. 56(a)). "A moving party must support its assertion by citing particular materials in the record or by showing the 'materials cited do not establish the. . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s].'" *Id.* (quoting I.R.C.P. 56(c)(1)(B)). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.'" *Owen*, 168 Idaho at 641, 485 P.3d at 137 (quoting *Trumble*, 166 Idaho at 141, 456 P.3d at 210). A "mere

scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id*.

"The admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold question to be answered before applying the liberal construction and reasonable inferences rule to determine whether the evidence is sufficient to create a genuine issue for trial." *J–U–B Engineers, Inc. v. Security Ins. Co. of Hartford*, 146 Idaho 311, 314–15, 193 P.3d 858, 861–62 (2008). Courts evaluating the admissibility of such evidence are afforded discretion in making this threshold determination. *Neeser, Tr. of Gerald E. Neeser Revocable Living Tr. v. Inland Empire Paper Co.*, 170 Idaho 692, 696, 516 P.3d 562, 566 (2022) (citing *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012)); *Losee v. Deutsche Bank Nat'l Tr. Co.*, 165 Idaho 883, 887, 454 P.3d 525, 529 (2019) ("the trial court has discretion to decide whether an affidavit may be considered on summary judgment under Rule 56(e) [now Rule 56(c)(4)]"). When reviewing the record for an alleged abuse of discretion, this Court must determine whether the trial court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863 421 P.3d 187, 194 (2018).

The interpretation of a statute is a question of law over which this Court exercises free review. *Med. Recovery Services, LLC v. Lopez*, 163 Idaho 281, 283, 411 P.3d 1182, 1184 (2018).

### III. ANALYSIS

Dickenson raises three issues on appeal: (1) that disputed issues of material fact precluded summary judgment; (2) that the question of causation should have been a question for the jury; and (3) that the district court erred in its interpretation of the Whistleblower Act. Though these three issues are clearly delineated in Dickenson's statement of issues section of his brief, his opening brief includes practically no citations to the record to support his claims. For example, a key question here is what was said during the two meetings when Dickenson surreptitiously recorded the discussion between himself and Resser. Neither the recordings themselves nor a transcript of either meeting is in the record, and we are left to divine from Dickenson's generalized or conclusory statements in his affidavit what was said. This dilemma alone is not just problematic, but fatal to Dickenson's position on appeal. And this shortcoming is not only evident before this

6

Court, but the district court also noted the following when entering summary judgment against Dickenson:

> [Dickenson] . . . alleges that Richardson [the deputy who investigated his complaints after the pre-termination meeting with the County Commissioners] found the majority of his allegations to be credible. **[Dickenson] cites no evidence in support**.
>
> ….
>
> [B]ased upon [Dickenson's] contentions, the recordings created evidence of notice to the sheriff of [Dickenson's] allegations of such violations. A notice of violations may certainly include documentation of those violations. Here, however, **there is no evidence of any transmission of such documentation to the sheriff during the surreptitiously-recorded conversations**. Certainly, **there is no evidence** that plaintiff, of his own volition, transmitted the surreptitious recordings to the sheriff or any other authority.
>
> ….
>
> **[Dickenson] has presented no evidenc**e that [the policies in question] restricted [his] ability [to document violations].
>
> **….**
>
> Even if the office policy could be construed as a restriction on documentation activity within the meaning of the statute, and even if [Dickenson's] surreptitious recordings could be construed as documentation, **[Dickenson] has presented no evidence in support of his burden to show that the policy was an unreasonable restriction on his ability to document violations of law, rules or regulations. As a result, [Dickenson] has not provided evidence creating a genuine issue of material fact that he was terminated because he engaged in an activity protected by Idaho's Whistleblower Act. . . .**

(Emphasis added).

Thus, there is effectively "no evidence," to quote the district court, to support Dickenson's contentions on appeal. As we have recently said, "[w]e will not consider issues that lack 'citations to the record, citations of applicable authority, or comprehensible argument.'" *Kelly v. Kelly*, 171 Idaho 27, 45, 518 P.3d 326, 344 (2022) (quoting *Bach v. Bagley*, 148 Idaho 784, 791, 229 P.3d 1146, 1153 (2010)). *See also Owen v. Smith*, 168 Idaho 633, 646, 485 P.3d 129, 142 (2021) ("We will not consider the merits of the Owens' claims because they consist of conclusory statements that lack citations to the record."). "[T]he party appealing any decision to this Court has the imperative duty to provide the Court with a complete record necessary to perform its undertaking. This Court is, after all, a reviewing Court, and that review is confined to the record before us." *Groveland Water & Sewer, Dist. v. City of Blackfoot*, 169 Idaho 936, 940–41, 505 P.3d 722, 726–27 (2022).

7

It is not the role of this Court to search the record on appeal for citation or argument. Indeed, "[j]udges are not like pigs, hunting for truffles buried in briefs." *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). "[A]ppellants, rather than [this Court], [must] ferret out and articulate the record evidence considered material to each legal theory advanced on appeal." *Conto v. Concord Hosp., Inc.*, 265 F.3d 79, 81–82 (1st Cir. 2001). As a result, "we will not search the record in an effort to determine whether there exists [ ] evidence which might require submission of the case to a jury." *Gross*, 53 F.3d at 1546 (quoting *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992)). *See Bach*, 148 Idaho at 790, 229 P.3d at 1152 (quoting *Suits v. Idaho Bd. of Prof'l Discipline*, 138 Idaho 397, 400, 64 P.3d 323, 326 (2003) ("This Court will not search the record on appeal for error.").

We note this benchmark at the start because it is possible that, had this Court been provided an adequate record (if such facts were even available to present to the district court), Dickenson may have had legitimate concerns to raise under the Whistleblower Act. That possibility, however, is entirely speculative because we do not have the recordings before us to determine what was discussed in the two important meetings. Dickenson put forth no effort to augment the record, and it is not our role as an appellate court to speculate what that evidence may show. Had we been presented with an adequate record, or had Dickenson placed *any* evidence into the record to substantiate his claims, he may have succeeded. But without those documents before us, we will not presume what evidence they contained. "It is simply not the proper role of an appellate court to create a record for the parties and then search through it ourselves, attempting to identify the critical information necessary to make the case for a litigant." *Groveland Water & Sewer, Dist.*, 169 Idaho at 941, 505 P.3d at 727 (citing *Bach v. Bagley*, 148 Idaho at 790, 229 P.3d at 1152).

Beyond that, we also note that Dickenson's briefing on appeal is nearly devoid of legal authority. Throughout the opening brief, Dickenson's legal argument contains a single paragraph with citation to case law and one citation to a statute. "Usually, a party's failure to cite any authority for its position would result in the issue being waived." *Farm Bureau Mut. Ins. Co. of Idaho v. Eisenman*, 153 Idaho 549, 554, 286 P.3d 185, 190 (2012) (citing *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (holding that issues "not supported by propositions of law, authority, or argument. . ." are waived "if either authority or argument is lacking, not just if both are lacking.")).

8

We have cautioned that "[t]he days of simply restating rote, conclusory phrases such as 'the court erred,' or 'the court abused its discretion,' without citations to the record or transcript and the appropriate law are long past." *Groveland Water & Sewer, Dist.*, 169 Idaho at 941, 505 P.3d at 727 (citing *Bach*, 148 Idaho at 790, 229 P.3d at 1152) ("Where an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court."). "Rather, the missing portions of that record are to be presumed to support the action of the trial court." *Rencher/Sundown LLC v. Pearson*, 165 Idaho 877, 881, 454 P.3d 519, 523 (2019) (internal quotation omitted).

The limited facts we *do* have in the record are largely from two sources. The first is a typewritten—but unsigned—statement listed as an exhibit and attached to Resser's declaration. The second consists of the statements made in Dickenson's affidavit in response to the County's motion for summary judgment. Those statements are "incorporated" into Dickenson's brief on appeal with a single footnote at the beginning of the "Concise Statement of the Facts" section, indicating that Dickenson's statement of facts was taken verbatim from his response to the motion for summary judgment. But this method of drafting wholly ignores the mandates of our appellate rules. *See* I.A.R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon.").

The record establishes that Dickenson allegedly became aware there was a problem with improper and illegal activities on behalf of several deputies. During that same time, Resser had a stroke, and personnel issues were redirected to Eells. Dickenson alleges in his affidavit that he "tried to report to the Sheriff" constitutional issues related to arrests, searches, and misstatements in police reports. Dickenson alleges that when he tried to report activities, Eells would dismiss him. According to Dickenson, he spent "over six months trying to report (talk) to Sheriff Resser about the illegal and unconstitutional activities going on with various deputies, including his former son-in-law." These allegations, while pertaining to events that took place before Dickenson recorded the May 3, 2019, and May 8, 2019, meetings, were never put in writing—from what we can glean from the record before us—until a month *after* Dickenson was informed of his impending termination on May 30, 2019. This statement was produced following the Sheriff's "Notice of Findings of Investigation and Proposed Disciplinary Action: Termination from Sheriff

9

Department[]." There is *no* evidence in the record to substantiate Dickenson's claim that he made these disclosures *before* the County allegedly took adverse action against him–nor is there evidence establishing that these disclosures were causally connected to the County's actions.

Following that May 30, 2019, notice, Dickenson requested a pre-termination hearing with the Benewah County Commissioners. The meeting was held on June 26, 2019, nearly six weeks after the surreptitiously recorded meetings took place. Dickenson, Resser, and the County Commissioners attended the hearing. At that hearing, Dickenson gave Resser a document outlining allegations of wrongdoing. Both the County's motion for summary judgment and Resser's affidavit refer to this document, and it was included as an exhibit to Resser's affidavit. Dickenson, however, makes no mention of it on appeal, despite it (1) providing some semblance of what Dickenson *may have* tried to communicate to the Sheriff before May 3, 2022; and (2) being Dickenson who "bears the burden of proving error" on appeal. *Allen v. Campbell*, 169 Idaho 125, 129–30, 492 P.3d 1084, 1088–89 (2021).

The serious allegations contained in that document give us pause, since it alleged improper arrests, wrongful deployment of K-9 units, and more. However, the document was produced *well after* the alleged wrongdoing by the Sheriff's deputies that led to Dickenson's termination. It is also unsigned, undated, unsworn, and only outlines what Dickenson purportedly witnessed, which the County disputes. The document also includes what is called a "Statement to Sheriff Resser," which explains that Dickenson tried to talk with Resser about the alleged activities, but the Undersheriff either discounted the allegations as "petty picking" or "deferr[ed]" the Sheriff's attention to something else. Though Dickenson's claims point to what could be valid questions, we have nothing that provides foundation for *when* those claims were raised or any other substantiated evidence, other than vague references that Dickenson "tried [without success] to report problems to the Sheriff." These scant and conclusory allegations are insufficient to survive summary judgment:

> [T]he nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment. A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment. Instead, the nonmoving party must respond to the summary judgment motion with *specific facts* showing there is a genuine issue for trial.

*Lola L. Cazier Revocable Tr. v. Cazier*, 167 Idaho 109, 114–15, 468 P.3d 239, 244–45 (2020) (emphasis added) (quoting *McGimpsey v. D&L Ventures, Inc.,* 165 Idaho 205, 210, 443 P.3d 219,

224 (2019)). "'Statements that are conclusory or speculative do not satisfy either the requirement of admissibility or competency under' I.R.C.P. 56(c)(4)." *Berian v. Berberian*, 168 Idaho 394, 483 P.3d 937, 953 (2020) (quoting *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002)). *See also* I.R.C.P. 56(c)(1):

> (1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . .

Dickenson's efforts to satisfy these Rule 56 standards failed below, and they continue to fail on appeal. *What* attempts Dickenson made to report and *when* he tried to make such reports are questions that remain unanswered. In short, we have nothing in the record to support Dickenson's allegations on appeal that he *tried* to report his allegations and was rebuffed before the County took adverse action against him. As the non-moving party responding to a motion for summary judgment in which the County established the absence of material facts, Dickenson "cannot merely rely upon [his] pleadings, but must produce affidavits, depositions, or other evidence establishing an issue of material fact." *Holdaway v. Broulim's Supermarket*, 158 Idaho 606, 611, 349 P.3d 1197, 1202 (2015) (citation omitted). While Dickenson submitted an affidavit, as noted, that affidavit fails to "make a showing sufficient to establish the existence of an element essential to [his] case when [he] bears the burden of proof." *Valiant Idaho, LLC v. JV LLC*, 164 Idaho 280, 286, 429 P.3d 168, 174 (2018) (quoting *Samuel v. Hepworth, Nungester & Lezamiz, Inc.* 164 Idaho 84, 87–88, 996 P.2d 303, 306–07 (2000)). Dickenson failed to put forward sufficient evidence that establishes he tried to report violations before the County took adverse action against him. As a result, he failed to establish an issue of fact that precludes summary judgment.

There was some discussion during oral argument that the evidence in the record could be sufficient to show, based on Dickenson's vague statement that he "tried" to make a report of wrongdoing, that his attempt is sufficient under the Whistleblower Act to get his case to a jury. Idaho Code sections 6-2104 and 2105 combine to set forth the elements necessary to establish a whistleblower case:

> (1)(a) An employer may not take adverse action against an employee because the employee … *communicates in good faith* a violation or suspected violation of law, rule or regulation adopted under the law of this state, a political subdivision of this

11

state or the United States. Such communication shall be made at a time and in a manner that gives the employer reasonable opportunity to correct the waste or violation.

I.C. § 6-2104(1)(a) (emphasis added). Moreover,

To prevail on an action brought under the authority of this section, the employee shall establish, by a preponderance of the evidence, that the employee has suffered an adverse employment action because the employee, or a person acting on his behalf, *engaged or intended to engage in an activity protected under section 6-2104*, Idaho Code.

I.C. § 6-2105(4) (emphasis added).

While section 6-2105(4) could potentially provide an avenue for Dickenson's claims to survive summary judgment, since "trying" and "intending to engage" are logically comparable, this avenue fails for two reasons. First, the argument that Dickenson was "trying" to speak with the Sheriff created an issue of fact under section 6-2105(4) but that argument was never made below. Indeed, Dickenson never cited section 6-2105 to the district court, and it was never mentioned in Dickenson's opening brief or his reply brief to this Court. His argument was limited to asserting that his surreptitious recordings were his attempts to "communicate in good faith" under section 6-2104(1)(a). Second, the record is devoid of *particular* facts showing that Dickenson intended to engage in a protected activity when "trying" to speak with the Sheriff, and that he was terminated for his *attempt*. The record shows: (1) Dickenson was terminated and provided with an explanation on how he violated BCSO and Benewah County policies; (2) he attended a pre-termination hearing with the Sheriff and the County Commissioners; (3) the hearing led to an investigation of his claims; and (4) he received amended findings from the Sheriff indicating the final decision to terminate Dickenson for violating the same policies listed in the initial findings. Dickenson was also terminated for lying to the Sheriff about what he had done— conduct that caused the county prosecutor to raise concerns about Dickenson's future ability to testify as a credible witness; and (5) Dickenson appealed to the Board of County Commissioners, which upheld his termination. There is simply no reliable evidence, even viewing the record in Dickenson's favor, which creates an issue of fact whether he was terminated for communicating "in good faith the existence of any . . . violation or suspected violation of a law, rule or regulation adopted under the law of this state. . . ." I.C. § 6-2104.

As quoted above, the district court explained that there was "no evidence of any transmission [or any attempted transmission] of [protected] documentation to the sheriff during

the surreptitiously-recorded [sic] conversations." Without the recordings in the record contradicting the district court, we presume the record supports the court's decision. *Rencher/Sundown LLC v. Pearson*, 165 Idaho 877, 881, 454 P.3d 519, 523 (2019) ("the missing portions of that record are to be presumed to support the action of the trial court.") (internal quotation omitted). The district court concluded that Dickenson did not "provide[] evidence creating a genuine issue of material fact that he was terminated because he engaged in an activity protected by Idaho's Whistleblower Act, and summary judgment [is] granted to defendants." This argument has not been effectively refuted by Dickenson on appeal. Therefore, we affirm the district court.

## V. CONCLUSION

The district court's judgment is affirmed for the reasons set forth above.

Justices BRODY, STEGNER, MOELLER, and Judge *pro tem* CHRISTENSEN CONCUR.